UNITED STATES, Appellee

v.

RAYMOND C. CHILDS, Basic Airman, U. S. Air Force, Appellant

5 USCMA 270, 17 CMR 270

No. 4965

Decided December 10, 1954

Emerson W. Browne, Esq., Col A. W. Tolen, USAF, and Maj John J. Ensley, USAF, for Appellant.

LT COL Harold Anderson, USAF, and CAPT Giles J. McCarthy, USAF, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged in a single specification with assault upon a basic airman by striking him in the left eye with a sharp instrument, the exact description of the weapon being unknown. The date of the offense was August 23, 1953. He was found guilty by the court, sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for one year. Except as to the suspension of the execution of the sentence during the appellate processes, the sentence was approved by intervening authorities. A petition for grant of review was filed in this Court setting forth two assignments of error. After a review of the record, and a consideration of the briefs, we, on the 17th day of June 1954, denied the petition. A motion to extend the time for filing a petition for reconsideration of our ruling was filed and the accused was allowed up to and including July 6, 1954, to prepare and file the appropriate pleadings. On July 7, 1954, a motion for a reconsideration of the petition was filed. However, it was augmented by an affirmative petition for a new trial. On August 6, 1954, the requested reconsideration was denied, but an order was issued authorizing the accused the right to argue orally his petition for a new trial. This opinion is limited to the questions raised by the petition and arguments of defense counsel.

Because the sufficiency of the evidence to support the findings and sentence has been disposed of by our earlier ruling, only a brief resume of the attending facts and circumstances of this unfortunate incident is necessary to bring the issues into focus. The setting of the offense was in a barroom in Angeles, Philippine Islands. On the evening of August 23, 1953, at approximately 9:00 o'clock, the accused was in the Savoy Bar when the victim entered and commenced conversing with him. The latter was under the influence of intoxicating liquor and an argument ensued. Both men stepped outside and proceeded into an adjoining bar. There the argument continued, the accused struck the victim in the left eye and he fell to the floor. When he arose, his left eye was bleeding profusely and he requested some water from the proprietress to wash the blood from the injured optic. She apparently concluded that washing would not be the proper treatment and so a cloth was furnished to the victim to retard the flow of blood. He was assisted to a bus and with considerable difficulty he returned to his station. When he arrived on the post, he was taken to the medical dispensary and treated by Lieutenant Colonel Kendrick, a physician and surgeon, whose qualifications were conceded by the litigants. The doctor's testimony, related only in its most important features, is as follows: He examined the victim on the night in question at 9:30 o'clock; there were several internal hemorrhages of the victim's left eye which he could observe from a distance of six feet; he ascertained that the eye had no vision, not even light perception; there was no swelling of the upper or lower eyelid but there was a laceration of the sclera of the eyeball which is in the thick, tough structure of the eye; the approximate length of the wound laterally was five-eights of an inch, and it penetrated to a depth of over one-half inch; the wound was of such a character that in his opinion it was caused by a sharp and rigid instrumentality; he concluded that the most likely instruments to cause such an injury would be a fingernail file or a small knife with a narrow blade of about one-half inch in width; that the injury could not have been caused by a fingernail as it would cause a "puncture wound" which is different from the "lacerated wound" he found in his examination; he particularly sought to find any foreign object in the eye, but found none; in reply to the following question "How could the eyeball be so injured and yet cause no damage to surrounding tissues if the instrument was held in the hand and thrown as a

**272**

punch?" he answered: "The bony structure of the eye socket would stop the fist and in order for an injury to occur as deep as this one, there would have to be some sort of an instrument of some length. I must explain this to you that the eyeball is a tough structure. It takes a lot of force to get into the eyeball. In this case the eyeball was perforated and that in itself—the instrument penetrating this tough object could absorb the force of a fist coming into the face without the fist ever contacting the face."

The accused admitted striking the victim in the eye at the time and place alleged, but denied emphatically that he had an instrument of any kind in his hand. He claimed corroboration of the latter fact, in the testimony of four eye witnesses to the altercation who all testified they did not observe any weapon being held by him. However, all parties who were in a position to observe agreed that the eye was undamaged before the blow, but thereafter was injured and bleeding noticeably.

The pleadings on the motion for a new trial are informal and lack some of the averments which should be set forth, but we will treat them as sufficient to require disposition of the issues raised. We do this in spite of the fact that the Manual sets out the essential requirement that such a petition be signed under oath or affirmation, and here we have neither. All that appears in the record are two affidavits attached to a brief filed before a board of review and a document filed in our Court captioned "Motion For Reconsideration Of Petition For Grant Of Review And/Or Petition For A New Trial." We are asked to assemble all the documents, consider them as a motion for new trial, and grant the requested relief. Out of a superabundance of care for the rights of an accused, we overlook the deficiencies but we do not desire to lead practitioners to believe that the Manual requirements can be disregarded with no penalty attached.

The basis for the petition for new trial is a claim of newly discovered evidence. It should be observed that this case was tried on October 5, 1953, and the completed record of trial was served on the accused on the 26th day of October 1953. The convening authority did not act until November 6, 1953. In the record, attached to the brief filed with the board of review, are the aforementioned two affidavits which were executed on the 23d day of October 1953, some two weeks prior to the time the convening authority affirmed the findings and sentence. In substance, these affidavits state: that the two affiants were detailed as guards on the second shift at the main gate at Clark Air Force Base, ~~Manila, P. I.,~~ Angeles City that about 9:30 p. m., the victim came to the main gate in a drunken condition; that he was holding his hand over an injured left eye and his shirt was covered with blood; and that in answer to a question propounded by one of the affiants as to how the injury was inflicted, the victim stated "that it happened while he was walking alone near the bridge in Angeles some Filipinos jumped him from behind."

The accused asked us to hold that because the victim made the quoted statement which is asserted to be inconsistent with his sworn testimony, a new trial should be granted. We reach a different conclusion as we believe the general principles governing new trials and related matters found in the Manual for Courts-Martial, United States, 1951, require us to rule adversely to his prayer for relief. Paragraph 109d of the Manual provides as follows:

"*Grounds for new trial.*—(1) *General.*—A new trial under the provisions of Article 73 will be granted only upon the grounds of newly discovered evidence or fraud on the court. Sufficient grounds for granting a new trial will be deemed to exist only if within the discretion of the authority considering the petition all the facts and information before such authority, including, but not limited to, the record of trial, the petition, and other matters presented by the accused affirmatively establish that an injustice has resulted from the findings or the sentence and that a new trial would probably pro-

duce a substantially more favorable result for the accused.

"(2) *Newly discovered evidence.*— A new trial will not be granted on the grounds of newly discovered evidence unless the petition shows:

(*a*) That the evidence is in fact newly discovered, that is, discovered since the trial.

(*b*) That the petitioner exercised due diligence to discover the evidence at the time of trial.

(*c*) That the newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused."

There are, in fact, four tests laid down in the above quotation, and the showing made by the accused fails to satisfy the requirements of any one of them. These are: (1) The record must establish reasonably that an injustice has resulted from the findings and sentence; (2) the evidence is newly discovered; (3) due diligence to discover the testimony was exercised; and (4) the newly discovered evidence, if presented to a court, would probably produce a result more favorable to the accused. We will discuss them in the order stated.

First. Our reading of the record convinces us that the evidence was sufficient to sustain the finding and sentence and with one exception, a ruling on the admissibility of evidence, the case was tried within the framework of the Code and the Manual. Assuming, without deciding, that the one statement made by the victim to the physician while being given medical treatment, that an object of unknown nature struck him in the eye, which was excluded by the law officer, might have been admitted into evidence, its rejection was not prejudicial. At a later time in the trial the substance of this statement was given by the doctor and he, without question, excluded that method of injury for he stated unequivocally it would be an impossibility unless some foreign object was found in the eye.

Because of the physical condition of the victim, and to prevent the loss of sight in the other eye, he made a very careful and detailed examination for that specific purpose, and the results were negative. Moreover, on cross-examination, as a predicate for impeachment, the victim was asked if he did not make the following statement to the doctor: "While walking along the highway into Angeles, something struck me in the eye, an object of unknown substance." He admitted he could have made the statement, but he could not give a categorical yes or no answer as due to his physical condition he was out of his mind and he could not remember the substance of any conversations after his injury. Most certainly the record of trial, the petition of the accused, the affidavits supporting the motion for new trial, and other matters urged on us by the accused do not affirmatively establish that an injustice has resulted from the findings and sentence.

Second. There is no showing that the evidence set out in the affidavits was newly discovered — that is, discovered by the accused after the trial. Accused has not averred when he first discovered that the two guards had a discussion with the victim, and the two affidavits do not show when the subject was first discussed with him. The strongest point in his favor must be extracted from the statement found in in the brief prepared by trial counsel for use by a board of review. This is his statement: "After trial, certain facts were brought to the attention of defense counsel and are submitted herein in the form of sworn statements. Even though they may be more appropriately the basis for a new trial, rather than a matter to be considered upon review, they are nevertheless attached to this brief." Accepting the defense counsel's statement that they were brought to his attention after the trial, he does not go so far as to allege that the discussion between the guards and the accused, which took place in the base correction center, did not occur before trial. At best, the date accused learned of the purported testimony is buried in silence.

Third. Lack of diligence is apparent from the record. The route traveled by the victim from the ▮▮▮▮▮ ▮ scene of the crime to the hospital was well known. At the pretrial investigation it developed that he proceeded to the base by "jitney," conversed with the guards at the gate, was there transferred to an ambulance and taken to the hospital for medical treatment. The identity of the gate guards to whom the victim talked could have been readily ascertained, and apparently prior to trial they had disclosed the testimony now claimed as newly discovered. According to their affidavits, they were called before the company commander. At that time they disclosed information that the victim had made a statement to the effect he had been attacked by some Filipinos. The record does not remotely suggest any attempt on anyone's part to conceal the information, and a cursory investigation by accused and his counsel would have unearthed the testimony. There was ample time to make a thorough and complete inquiry as the injury was inflicted on August 23, 1953, and the trial was held on October 5, 1953. In that connection it is singular to note that defense counsel does not allege, by fact or by conclusion, that his failure to learn about the evidence was not due to the want of diligence on his or the accused's part. Clearly, we do not find from this record the due diligence necessary to support the requested relief.

Fourth. Even were we to find in favor of the accused on the three foregoing grounds, the last one ▮▮▮▮▮ ▮ would compel us to overrule his motion. At best, the purported evidence merely establishes an inconsistent unsworn statement made under circumstances which establish clearly its unreliability for the causes of the injury. Beyond any shadow of doubt it would not produce a different result. Defense counsel in his brief contends the statement was made within ten minutes after the incident. Witnesses fix the time interval between the injury and the medical examination as one-half an hour. It is established that the victim traveled one-half mile before reaching the guard post and then proceeded by ambulance after being detained at the gate. Moreover, the record speaks with certainty about some facts. These are: That the victim was struck in the left eye by the accused; immediately thereafter blood gushed from that organ; the victim left by jitney bus for the post; when he arrived there his eye was bleeding and his clothes were splattered with blood; he was intoxicated, in severe pain, and suffering from post injury shock; his condition was such that he was unable to cooperate in the taking of an X-ray picture of the eye; the injury was of such severity that he lost his eye; and its characteristics were such that it could have been occasioned only by the use of a small sharp rigid instrument.

When the uncontradicted testimony related above is combined with the facts about which there is little dispute, and they are considered in connection with the victim's sworn testimony that he remembers little, if anything, about his conversations after his misfortune, it becomes readily apparent his one unrealistic version of how his injury occurred would not change the outcome of a trial. Particularly is that true when his mental capacity was seriously impaired by alcohol and physical suffering. For us to assume that this inconsistency would have any impact on the court members would require that we find some likelihood of truth in the statement. The question of credibility is not of particular moment as the victim had admitted the probability of his having made at least one contradictory statement and that discrepancy was placed squarely before the court. In view of the difficulties under which he was laboring, we are not impressed with the argument that one more variant would have had any measurable impact on his credibility as a witness. Rambling statements under those circumstances would not necessarily discredit the victim in the eyes of court-martial members; and there was ample evidence from other disinterested witnesses to establish beyond all reasonable doubt that the victim was injured by the accused. If there was any probability of truth in the version the victim related

to the guards, then there might be some merit to accused's contention that a different result might be obtained on a new trial. But, to place any credence in the story that he was injured by some unknown Filipinos would require us to conclude that the victim, in the short span of ten to fifteen minutes, travelled a distance of one-half mile with blood flowing from his injured eye, and, in contradiction of the evidence that he boarded a bus and dismounted at the guard gate, was the subject of a second attack by some unknown Filipinos who, without inflicting any injuries to the face or body of the victim, damaged the same injured organ by the use of some sharp instrument. That would be stretching our credulity too far. Accepting the affidavits as having established that the victim made the quoted statement, its truthfulness is so inherently improbable that it amounts to no more than the mental aberrations of a soldier who was in a drunken condition, suffering from a serious injury, and literally out of his mind. We are morally certain that the statement would not cast any material doubt on the true cause of the injury, and its admission into evidence in a new trial would neither affect the weight of the other evidence nor destroy the credibility of the victim. We therefore find that there is no likelihood a more favorable result would inure to the benefit of the accused if a new trial was granted.

Accordingly, it is denied.

Chief Judge QUINN and Judge BROSMAN concur.