UNITED STATES, Appellee

v

RALPH D. WOOLBRIGHT, Recruit, U. S. Army, Appellant

12 USCMA 450, 31 CMR 36

*First Lieutenant Thomas Stapleton* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod.*

*Captain William A. Zeigler* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused, tried by general court-martial, pleaded guilty to escape from confinement, in violation of Uniform Code of Military Justice,. Article 95, 10 USC § 895, and not guilty to mutiny, in violation of Code, supra, Article 94, 10 USC § 894. He was found guilty of both offenses and sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement for three years. The convening authority approved the sentence. The board of review affirmed the findings of guilty but reduced that portion of accused's punishment involving confinement to eighteen months. We granted accused's petition for review on several issues revolving around his conviction of mutiny. Our disposition of the case necessitates only consideration of the question whether the evidence is sufficient to establish that offense. At the same time, we must dispose of accused's separate petition for a new trial.

Woolbright was a prisoner confined to the Fort Leonard Wood Stockade.

On December 29, 1959, he and several other prisoners were placed on a work detail under the supervision of Private First Class Albert P. Loriot. The task to be performed consisted of enlarging a sand trap on the ninth green of a golf course being constructed at Fort Leonard Wood. The group of prisoners was driven to the vicinity of the ninth green. It was a cold rainy day, and none of the men were furnished with protective clothing.

Upon arrival, the guards permitted the prisoners to remain in the truck for approximately ten minutes, as the weather conditions were such that they were uncertain whether the men would be required to work. Eventually, however, tools were procured from a nearby shed and the detail proceeded to the green. There, the prisoners were allowed to enter an adjacent latrine. Ten or fifteen minutes elapsed before Private First Class Loriot was able to reassemble them at the bunker.

The accused and several prisoners began to dig in the sand trap. Other prisoners, including Privates Fidler,

Harris, and Loyd, stood idly by the hole, conversing with each other. Loyd was finally required to join the other workers. About thirty minutes later, Fidler took out a cigarette and started to light it. He complied with an order to put it out.

At this point, the accused stuck his pick in the ground and removed a cigarette from his pocket. He announced that he was not afraid to smoke and would use his pick to strike anyone who attempted to stop him. He lit his cigarette and refused to obey Loriot's order to extinguish it.

Thereafter, the other prisoners began to stop working and to light cigarettes. The guards attempted unsuccessfully to get the group to quit smoking and resume digging. Parenthetically, it should be noted that this was the first occasion on which orders not to smoke had been strictly enforced. Four or five minutes later, the prisoners obeyed the guards' orders to form in a column of twos and to march back to the tool shed. There, they turned in their tools.

The stockade was contacted and the prisoners were moved into the open. A Lieutenant Hoffman addressed the group and urged them to return to the project. He was answered defiantly by Prisoners Housdon and Fidler. Fidler was ordered returned to the stockade.

Major Anderson, the Stockade Officer, arrived on the scene. He also exhorted the prisoners to return to work. Housdon again voiced defiance. Anderson left the group standing in the open in the hope that they would become so uncomfortable they would agree to work. He returned to the stockade, and, noting the lateness of the hour, ordered the prisoners returned to the confinement facility.

The board of review found as a matter of fact that neither Major Anderson nor Lieutenant Hoffman ordered the prisoners to return to work. It also found that the accused remained passive and quiet throughout the proceedings which transpired after the group left the sand trap. On oral argument, the Government conceded that the offense of mutiny either occurred during the sand trap episode or not at all. Thus, in the picturesque, but nonetheless accurate phraseology of the appellate defense counsel, the issue to be resolved is whether the evidence before us supports the verdict that the accused is guilty of committing "a peaceful, non-violent, one man, three minute mutiny in a sandtrap of a golf course, while under armed guard."

The Government contends that the offense of mutiny, in violation of Code, supra, Article 94, merely requires that the accused, with intent to override military authority, engage in joint disobedience of lawful orders with other persons and that the parties involved need not also act in pursuance of a common intent to set aside the military command power over them. We disagree and conclude that this form of mutiny requires both collective action and a collective intent to override military authority.

Code, supra, Article 94, provides:

"(a) Any person subject to this chapter who—

"(1) *with intent to usurp or override lawful military authority,* refuses, in concert with any other person, to obey orders or otherwise do his duty or creates any violence or disturbance is guilty of mutiny; . . ." [Emphasis supplied.]

In United States v Duggan, 4 USCMA 396, 15 CMR 396, we had occasion exhaustively to consider the provisions of the mentioned Article. There, we pointed out that it embraced two distinct forms of mutiny. One involves the creation of violence or disturbance, with intent to override or usurp authority, and may be committed by a single person. The other, with which we are here concerned, requires the same intent but also necessitates concert of action between two or more persons. United States v Duggan, supra, at page 398. In so construing the statute, we adopted the explanation of Congressional intent found in the Manual for Courts-Martial, United States, 1951, at page 325:

"Except when the mutiny is com-

452

mitted by creating violence or disturbance, mutiny *imports collective insubordination which necessarily includes some combination of two or more persons in resisting lawful military authority. Such concert of insubordination* need not be preconceived nor is it necessary that the act of insubordination be active or violent. It may consist simply in *a persistent and concerted refusal or omission to obey orders, or to do duty, with an insubordinate intent, that is, with an intent to usurp or override lawful military authority.* The intent may be declared in words, inferred from acts done, or inferred from surrounding circumstances." [Emphasis supplied.]

Moreover, in United States v O'Briski, 2 USCMA 361, 8 CMR 161, when confronted with a contention that the law officer had erroneously instructed on the elements of mutiny, we concluded that his charge as a whole was correct and stated, at page 364:

". . . At two distinct junctures, subsequent in point of time to the use of the portion of the instructions quoted above, the law officer stated quite clearly and unequivocally that the proof required to convict in the case at bar was *that each accused, with intent to override lawful military authority, and in concert with others, refused to engage in assigned work, and exhorted others to do the same. Obviously these statements were accurate.*" [Emphasis supplied.]

Finally, Colonel Winthrop points out that mutuality of intent is the most distinguishing feature of the crime of mutiny. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, pages 578–579. In short, mutiny by disobedience or refusal to perform duty is a specialized type of conspiracy in which the co-actors must share a common purpose. There must be concert of action and concert of intent. To hold otherwise would mean that mere joint disobedience of orders constitutes this gravest of military crimes. Compare United States v April, 7 USCMA 594, 23 CMR 58. We, therefore, reject

the Government's contention and conclude that this type of mutiny requires concerted action with at least one other person who also shares the accused's intent to usurp or override lawful military authority.

Turning to the facts before us, and judging the record in light of its sufficiency in law to establish the offense charged, we are compelled to hold that the circumstances do not support the findings of guilty. In view of the Government's concession and the determination of the board of review, we do not concern ourselves with the events which transpired after the men were formed and marched away from the ninth green. The accused's conduct at the bunker reveals only that he threatened the guards collectively and defiantly lit a cigarette. Thereafter, he refused to obey Loriot's order to extinguish it and to return to work. That his insubordinate attitude may have led the other prisoners also to quit work and to commence smoking is unquestionably established. The record, however, indicates a sequence of separate disobediences by individual prisoners rather than concert of action and joint intent to usurp or override Loriot's authority. The accused's act may well have caused the others' resentment to boil over and erupt in the cloud of refusals to work which followed, but it does not appear that any two or more of the group were animated by a common purpose to set aside the authority placed over them. Accused did nothing after his initial outburst to incite the prisoners or to resist orders, and we find it quite significant that he made no attempt to exhort his fellows to join with him in his insubordination. In short, this transcript depicts no more than a series of actions by different persons totally lacking a common intent. Accordingly, we find the evidence insufficient to establish the "technical" mutiny which the Government claims to be supported by the record before us.

It is nonetheless clear that accused committed the lesser included offense of willful disobedience of Loriot's order

**453**

to extinguish his cigarette and resume performance of his assigned task. Accordingly, this lesser offense may properly be affirmed.

Turning to the accused's petition for a new trial, we find that he alleges the existence of newly discovered evidence that the project upon which accused and the other prisoners were assigned to work was the property of Fort Leonard Wood Golf Club, an entirely private organization. See United States v Robinson, 6 USCMA 347, 20 CMR 63. We need not reach the issue which this petition presents. It is clear that each item of evidence presented in support of the allegation was in existence prior to the trial and easily available to defense counsel. Yet, the entire record is devoid of any proof concerning the ownership of the golf course or the nature of the Fort Leonard Wood Golf Club.

In order to warrant granting a petition for new trial, it must appear that the "newly discovered" matters would not have been disclosed by the exercise of due diligence at or before the original trial. United States v Childs, 5 USCMA 270, 17 CMR 270; United States v Blau, 5 USCMA 232, 17 CMR 232; United States v Bourchier, 5 USCMA 15, 17 CMR 15. Here, we are not offered a shred of evidence which would not have been revealed by the most casual inquiry prior to accused's trial, nor is there any explanation concerning the lack of such an investigation. Thus, under the circumstances, we must hold that petitioner has failed to show the exercise of due diligence and is, therefore, not entitled to another trial. United States v Childs, supra.

The petition for a new trial is denied. The findings of guilty of mutiny are set aside. The record of trial is returned to The Judge Advocate General of the Army for further reference to the board of review. The board may affirm findings of guilty of disobedience of Private First Class Loriot's orders and reassess the sentence on the basis of this offense and that of escape from confinement.

Chief Judge QUINN concurs.