# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB, KRAUSS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Inmate CHARLES M. SAVAGE**
**United States Army, Appellant**

ARMY 20110495

Headquarters, US Army Combined Arms Center and Fort Leavenworth
Susan K. Arnold, Military Judge
Colonel Fred P. Taylor, Staff Judge Advocate

For Appellant: Major Richard E. Gorini, JA (argued); Major Richard E. Gorini, JA; Captain Richard M. Gallagher, JA (on brief); Major Richard E. Gorini, JA (on reply brief); Captain Aaron R. Inkenbrandt, JA.

For Appellee: Captain Steve T. Nam, JA (argued); Major Robert A. Rodrigues, JA; Captain Steve T. Nam, JA (on brief).

11 April 2013

---------------------------------
OPINION OF THE COURT
---------------------------------

KRAUSS, Judge:

Contrary to his pleas, a military judge, sitting as a general court-martial, convicted appellant of willful disobedience of a lawful order, mutiny, damaging military property, three specifications of assault consummated by a battery, and kidnapping in violation of Articles 90, 94, 108, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 894, 908, 928, 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to confinement for five years. The convening authority disapproved the finding of guilty as to kidnapping, approved the remaining findings of guilty, and approved only so much of the sentence as extends to confinement for two years.

Appellant's case is now before this court for review under Article 66, UCMJ. Appellant assigns as error that the evidence is legally and factually insufficient to support his convictions and personally raises a number of issues pursuant to *United*

*States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). After examining the record of trial, considering the parties' briefs, and enjoying the benefit of oral argument, we agree with appellant in part and find the evidence insufficient to support appellant's conviction for willful disobedience, aspects of the mutiny alleged, aspects of the damaging military property charge, and two of the assaults, but otherwise find the evidence sufficient to establish guilt for what remains.

Despite the government's reliance, at least in large part, on an erroneous theory of liability and the fact that the military judge found appellant guilty of certain offenses for which the evidence is insufficient, close review of the video evidence admitted establishes beyond any reasonable doubt that appellant participated in a mutiny and damaged military property. We shall address the relief to be granted in our discussion below and in our decretal paragraph.

## BACKGROUND

The charges in this case stem from a disturbance at the United States Disciplinary Barracks (USDB) in August of 2010. The evidence consists almost entirely of video of the disturbance recorded from different angles, most of which offers no audio of the inmates' statements. None of appellant's fellow inmates testified against him, appellant made no admission, and the other evidence admitted does little or nothing to signify appellant's intent throughout.

Careful review of all of the video evidence, in conjunction with the other evidence admitted at trial, leads us to the following findings of fact. The disturbance was touched off by an unprovoked assault upon one of the prison guards, Private First Class (PFC) AA, in one of the USDB's Special Housing Units (SHU). First one, then a second inmate, who were outside their cells at the time, assaulted and subdued PFC AA. One of those inmates then wrested the keys to the cells of the SHU from PFC AA, and after moving the guard to one of the shower rooms in the SHU, proceeded to open the doors of some of the two dozen cells in the SHU. A more general disturbance immediately ensued. Prisoners barricaded themselves inside the SHU, blocking the front door with furniture and various items, and barricading the back door by securing it shut with a sheet tied to a pole. At least one of the prisoners freed from his cell threw a tray at the video camera dome located on the ceiling of the SHU and two of the inmates freed from their cells committed a second assault upon the guard held in the shower room. Other inmates simultaneously continued to throw furniture, books, and other items about the SHU and spray water on the floor. Much, if not all, of this occurred while appellant apparently remained locked in his cell.

Appellant did subsequently exit his cell and mill about the SHU as others continued to actively engage in the disturbance. As the disturbance progressed, the instigators of the scene made plain their demand to see the commandant of the USDB. They wanted to air certain grievances about their treatment at the hands of

certain guards (other than PFC AA).  Throughout the disturbance, despite repeated attempts by USDB authorities to engage the inmates in negotiation, and put an end to the disturbance peacefully, those inmates who responded refused negotiation or discussion with anyone other than the commandant or made other unreasonable demands for the surrender of a particular guard to their control.

In the midst of this ongoing disturbance, appellant did little other than continue to mill about exchanging brief unknown remarks with his fellow inmates. He checked on the well-being of the guard being held and apparently checked on the well-being of an inmate who had been out of his cell at the time the disturbance erupted but immediately retreated to another shower room in the SHU.  Appellant's actions captured on video offer little, if anything, to suggest the mind of a mutineer; that is until he approached a group of the inmates actively engaged in the disturbance and suggested they wad some sort of material and throw it at the overhead camera. Though he cannot be heard, appellant speaks with this group of prisoners, points to the overhead camera, points to the inmates' barricades at the front and back of the SHU, uses his hands to mimic the wadding of something up and then makes a throwing motion toward the camera.  Appellant then repeated the suggestion to one of the prisoners and yet again repeated the same suggestion to a second set of prisoners.

Immediately after appellant made this suggestion to the first set of prisoners, they moved out smartly and at least two began to either wad damp toilet paper and/or throw it at the overhead video equipment repeatedly.  It also appears that one inmate threw a can of shaving cream at the video equipment.  Some moments later other inmates joined in the effort by soaking and covering a towel in what appears to be shaving cream and throwing it up to the video equipment.  As a result of these efforts, the video camera was rendered ineffective.

The commandant ultimately arrived at the SHU directing the prisoners to lockdown (return to their cells) and stating that he would speak to them individually. In the meantime a force of USDB personnel had formed outside the SHU prepared to forcefully retake the same.  Rather than engage the commandant in negotiation or take the opportunity to address the commandant, those in the SHU, close enough to the commandant to hear him through the glass wall otherwise separating them, instead backed off and readied themselves for the coming onslaught.

A leader of the disturbance called for mattresses to reinforce the barricade at the front.  In response, appellant grabbed a mattress.  Though he never added to the barricade at the front, he held on to the mattress in defense, abandoning it once the melee of the breach was well underway.  Specialist (SPC) AK was one of the USDB soldiers at the fore of the breaching party.  During the breach, his helmet was torn from his head and he suffered minor injuries.

At trial, the government proceeded on the dominant theory that once appellant stepped out of his cell he was guilty of mutiny and all associated offenses.

It is unnecessary for the purposes of this decision to reiterate the disobedience and assault specifications at hand. The mutiny and damage to military property specifications were essentially as follows:

The Specification of Charge I, Article 94, UCMJ, alleged that appellant, "with intent to usurp and override lawful military authority, did, . . . create a disturbance by attacking Private First Class [AA], barricading himself in Special Housing Unit West of the United States Disciplinary Barracks, and exhorting others to join him in defiance of lawful military authority."

The Specification of Charge IV, Article 108, UCMJ, alleged that appellant, "did, . . . willfully damage by breaking apart furniture and recreation equipment, by flooding the Special Housing Unit floor with water, by defacing the windows of the Special Housing Unit, and by throwing objects at the video monitoring equipment, military property of the United States, the amount of said damage being in excess of $500.00."

Any additional facts necessary to the disposition of this matter are housed in our analysis below.

## LAW AND DISCUSSION

Article 66, UCMJ, provides that a Court of Criminal Appeals "may affirm only such findings of guilty . . . as it finds correct in law and fact." In performing our duty, we must conduct a de novo review of both the legal and factual sufficiency of appellant's convictions. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011). The test for factual sufficiency, on the other hand, "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Washington*, 57 M.J. at 399.

Mutiny has been long recognized as the most serious of military crimes. *See United States v. Woolbright*, 12 U.S.C.M.A. 450, 453, 31 C.M.R. 36, 39 (1961); *United States v. Sood*, 42 C.M.R. 635, 639 (A.C.M.R. 1970). It requires considerably more than a mere commotion no matter how disruptive or violent. Mutiny of the sort here alleged required the government to prove: (1) that appellant

4

created a disturbance; and (2) that appellant created this disturbance with intent to usurp or override lawful military authority. UCMJ art. 94; *United States v. Duggan*, 4 U.S.C.M.A. 396, 398, 15 C.M.R. 396, 398 (1954); *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 18.b.(1).[1]

Mutiny is defined as much by what it is not as what it is. For example, "a collective intent to defy authority falls far short of a collective intent to usurp or override military authority." *Sood*, 42 C.M.R. at 640 (A.C.M.R. 1970). Also, "[w]hen the persons involved merely demonstrate 'an intention to implore and invoke the very military authority which they are charged with seeking to override' there is no intent to override or usurp military authority." *United States v. Sanchez*, 40 M.J. 508, 511 (A.C.M.R. 1994) (quoting *Sood*, 42 C.M.R. at 640); *see also United States v. Brown*, 19 U.S.C.M.A. 591, 42 C.M.R. 193 (1970). However, those who "implore and invoke the very military authority they are charged with seeking to override" but fail to avail themselves of the opportunity when that opportunity presents cannot escape liability under Article 94, UCMJ, by relying on a previous invocation. *Sanchez*, 40 M.J. at 511.[2] For instance, those who create a disturbance demanding the commander listen to their grievances but then refuse the commander's attention in favor of overriding his authority are guilty of mutiny. *Id.*[3]

It is also important to recognize that an accused's mere presence in a group creating a disturbance is insufficient to establish that the accused entertained the requisite intent to mutiny. *See, e.g.*, *United States v. Anderson*, 4 C.M.R. 178 (A.B.R. 1952) (relative to failure to do one's utmost to prevent and suppress a mutiny and failure to report a mutiny under Article 94, UCMJ); *Sood*, 42 C.M.R. at 640. This comports with the law of principal liability. "Any person punishable

---

[1] Mutiny by disobedience or refusal to perform duty, rather than mutiny by violence or disturbance, requires the government to prove "concerted action with at least one other person who also shares the accused's intent to usurp or override lawful military authority." *Woolbright*, 31 C.M.R. at 39 (1961). "To hold otherwise would mean that mere joint disobedience of orders constitutes this gravest of military crimes." *Id.* (citation omitted).

[2] Of course, by no means does imploring authority to redress grievances immunize recalcitrant soldiers or inmates from criminal liability for offenses otherwise committed such as, for example, riot, breach of peace, assault, damaging property, etc.

[3] Neither does one escape liability under Article 94, UCMJ, through unreasonable demands for an audience with lawful authority. Such appeals must refer to "an immediately available lawful authority to redress grievances" for such invocation to be seriously considered on the question of intent in a mutiny case. *Id.*

under this chapter who: (1) commits an offense punishable by this chapter, or aids, abets, counsels, commands, or procures its commission; or (2) causes an act to be done which if directly performed by him would be punishable by this chapter; is a principal." UCMJ art. 77. Generally, criminal liability under Article 77, UCMJ, requires an affirmative step on the part of the accused. *United States v. Thompson*, 50 M.J. 257, 259 (C.A.A.F. 1999). The accused must "in some sort associate himself with the venture, in that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed." *United States v. Mitchell,* 66 M.J. 176, 178 (C.A.A.F. 2008) (quoting *United States v. Pritchett*, 31 M.J. 213, 217 (C.M.A. 1990)). "Mere presence at the scene of a crime is not enough to impose liability." *United States v. Simmons,* 63 M.J. 89, 92 (C.A.A.F. 2006).

Relative to the question of damage to military property, under Article 108, UCMJ, damage to military property includes "any change in the condition of the property which impairs its operational readiness." *United States v. Daniels*, 56 M.J. 365, 369 (C.A.A.F. 2002) (quoting *United States v. Peacock*, 24 M.J. 410, 411 (CMA 1987), citing *United States v. Ortiz*, 24 M.J. 164, 171 (C.M.A. 1987) (holding that damage "includes rendering military property useless for its intended purpose, even temporarily by means of disassembly, reprogramming, or removal of a component.)).

Turning now our attention to the instant case, the government properly concedes that the evidence is insufficient to sustain appellant's convictions for the assaults upon PFC AA. Concomitantly, we find the evidence insufficient to support appellant's conviction to that part of the mutiny based on those assaults.

We also find the evidence factually insufficient to support appellant's conviction for willful disobedience. Indeed, the evidence demonstrates reasonable doubt about whether appellant was in any position to hear or understand the commandant's order to lockdown. The video of this incident is misleading. The commandant's order is audible to the viewer only because the equipment recording the event was on the same side of the glass wall next to the officer issuing the order. Prosecution Exhibits (Pros. Ex) 1 and 2 (videos) otherwise establish that those in close proximity to appellant's location at the time of the order cannot be heard through the glass wall despite the fact they are speaking to one another in animated fashion. Doubts about whether appellant could hear this order were reinforced at trial by testimony from PFC AA, who never heard the order, and from a member of the USDB staff whose estimation of earshot favors appellant. We, therefore, disapprove the finding of guilty as to disobedience. *See, e.g., United States v. Pettigrew*, 19 U.S.C.M.A. 191, 195, 41 C.M.R. 191, 195 (1970); *Washington*, 57 M.J. at 399; *MCM*, pt. IV, ¶. 14.c.(2)(c) and (e).

The fact that appellant is not liable for disobedience does not, however, relieve him of liability for mutiny. That liability was perfected by appellant's instigation of damage to the overhead video equipment, the only purpose for which, we find, was to strengthen the inmates' barricade and defense of the SHU against lawful military authority, by impairing the authorities' ability to observe and impede their efforts to retake control of the inmates and the SHU. Such is enough to prove beyond any reasonable doubt that appellant shared the intent to usurp or override lawful military authority and joined in the creation of a disturbance, as far as the barricade, to accomplish that objective.

Participating in a barricade of the SHU against USDB authority constitutes a disturbance as contemplated by Article 94, UCMJ. *See, e.g.*, *Duggan*, 15 C.M.R. at 398; *MCM*, pt. IV, ¶. 41.c.(2) (disturbance includes acts that "impinge upon the peace and good order to which the community is entitled."). Community includes the USDB and SHU in these circumstances. *See Id*. at ¶41.c.(3). As such, prisoners barricading themselves in the SHU against the lawful authority of those responsible to maintain good order in the prison constitutes a disturbance.

Similarly, appellant's actions in blinding the overhead video camera to strengthen the inmates' defense against lawful military authority and his participation in that defense and barricade establish his intent to override military authority. Appellant individually formed and shared in the group's purpose to "'set aside, supersede, annul, disregard the wishes of, or . . . domineer over'" those military authorities attempting to reestablish the good order of the SHU and USDB. *Sanchez*, 40 M.J. at 511 (quoting *Woolbright*, 30 C.M.R. at 493). Any inference that appellant merely joined the group to implore lawful authority to address their grievances is excluded by the fact that appellant's intent to blind the overhead camera negates any such benign purpose.[4] *See Sanchez*, 40 M.J. at 511.

Similarly, we find the evidence lacking in sufficiency to prove beyond a reasonable doubt that appellant damaged anything other than the video equipment alleged; but, that his advice to others to effectively impair the operation of the overhead camera constitutes wrongful damage of military property. *See Daniels*, 56

---

[4] We do not find the evidence factually sufficient to preserve his conviction for that aspect of the mutiny alleging his exhortation of others to join in defiance of authority. While we have no reasonable doubt that he participated in the creation of a disturbance with the requisite intent by advising others to blind the overhead camera and by taking up a mattress in defense against lawful authority, the evidence is insufficient to establish that he separately exhorted anybody to do anything and scant as to the extent there was any exhortation by anyone save, perhaps, an initial burst of enthusiasm by some that can't be tied to appellant. *See Duggan*, 15 C.M.R. at 398.

M.J. at 369. Any reasonable doubt about that is removed by the fact that his fellow inmates immediately respond and follow appellant's direction to throw things at the camera, and, by doing what appellant encouraged, succeeded in effectively impairing the operation of that video equipment. What we cannot say with similar certainty is whether the damage that appellant caused amounts to a value over $500.00.[5] We will address this in our conclusion below.

Finally, we find the evidence sufficient to approve appellant's conviction for the assault upon SPC AK. That assault was the natural and probable consequence of appellant's direct participation in the barricade and defense of the SHU in violation of Article 94, UCMJ, and therefore subjects appellant to conviction for the act under Articles 77 and 128, UCMJ. *United States v. Wooten*, 1 U.S.C.M.A. 358, 3 C.M.R 92 (1952); *MCM*, pt. IV, ¶. 1.b.(5).

The government did rely on an erroneous presumption and advanced an erroneous theory of liability for mutiny at trial. Its presentation seems largely based on the notion that creation of a disturbance in and of itself constitutes mutiny and its theory of liability was explicitly based on the notion that the second appellant stepped out of his cell he was guilty of any and all offenses perpetrated by those responsible for the disturbance. This is not correct. *See* UCMJ arts. 77, 94; *Duggan*, 15 C.M.R. at 398. Appellant, however, does not benefit from the government's advance of an erroneous presumption and theory of liability at trial in this case. The charges and specifications properly alleged the essential elements of the offenses. He was ably defended at the court-martial by counsel who understood what the government must prove and raised this to the attention of the military judge on more than one occasion. Though the judge overruled an objection from the defense essentially complaining of the government's misstatement of the law, she did so characterizing the government's position as argument only. Neither this nor anything else in the record constitutes the sort of clear evidence necessary to overcome the presumption that the judge correctly applied the law and the elements of the offense alleged in making her independent judgement in the case. *United States v. Raya,* 45 M.J. 251, 253 (C.A.A.F. 1996); *United States v. Littlewood*, 53 M.J. 349, 354 (C.A.A.F. 2000).[6]

---

[5] It is equally plausible that this equipment was also damaged to some extent before any involvement of appellant at all and there is no evidence sufficient to parse the value of damage attributable only to appellant and the actions he encouraged.

[6] Somewhat troubling is the judge's apparent reluctance to view all of the video evidence admitted into evidence. She stated that she did not want to watch the video "aimlessly" and asked the parties to focus her on the parts they considered important. Compounding this trouble is the fact that neither of the parties focused the judge on the most relevant portions of the case contained in Pros. Ex. 2. In addition, the amount of time the judge spent in deliberation is significantly less than

Considering appellant's punishment in light of our decision here, we find the sentence as approved by the convening authority appropriate. Appellant's ultimate participation and role in the mutiny constitutes the gravamen of his misconduct. Mutiny is a capital offense. Here, it was referred to a court-martial that was not empowered to adjudge death, permitting a maximum sentence to life without eligibility for parole. As we previously recognized, mutiny constitutes the "gravest and most criminal" of military crimes. *Sood*, 42 C.M.R. at 639 (internal quotation omitted). In light of the entire case, any sentence relief is unwarranted. *See United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

**CONCLUSION**

On consideration of the entire record, the parties' briefs, oral argument, and those matters personally raised by appellant pursuant to *Grostefon*, the findings of guilty of Specifications 1 and 2 of Charge V, and Charge III and its Specification, are set aside and dismissed. In addition, the court finds, in relation to the Specification of Charge I, only so much of the finding of guilty that provides appellant "a person in the custody of the armed forces serving a sentence imposed by a court-martial, with intent to usurp and override lawful military authority, did, at Fort Leavenworth, Kansas, on or about 12 August 2010, create a disturbance by barricading himself in Special Housing Unit West of the United States Disciplinary Barracks" is affirmed; and in relation to the Specification of Charge IV, we amend and affirm only so much of the finding of guilty that provides appellant "a person in the custody of the armed forces serving a sentence imposed by a court-martial, did, at Fort Leavenworth, Kansas, on or about 12 August 2010, without proper authority, willfully damage by throwing objects at the video monitoring equipment, military property of the United States, the amount of said damage being less than $500.00." The remaining findings of guilty are affirmed.

Reassessing the sentence on the basis of the modified findings, the entire record, and in accordance with the principles of *Sales*, 22 M.J. 305 and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge

---

(. . . continued)

the amount of time all of the video evidence contains if viewed at normal speed. However, the defense counsel did request the judge view all of the material and suggested the judge fast forward through the parts less relevant. Therefore, we again apply the presumption that the judge did her duty and find nothing in the record sufficient to conclude the judge based her judgement on anything other than the relevant evidence admitted, including those portions of Pros. Ex. 2, especially depicted on the first of the 5 discs included in Pros. Ex. 2, in clip M2U00083_WMV V9.wmv from minute 21:30-29:30, and similar footage in the second clip included in the fourth disc (labled Disk 3), described in our discussion above.

SAVAGE—ARMY 20110495

Baker in his concurring opinion, the sentence as approved by the convening authority is AFFIRMED. All rights, privileges, and property, of which appellant was deprived by virtue of the findings of guilty being set aside by this decision, are hereby ordered restored. *See* UCMJ arts. 58(b) and 75(a).

Senior Judge YOB and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court