UNITED STATES, Appellee,

v.

Specialist Michael A. WILLIAMS,
398–78–9379, United States
Army, Appellant.

ACMR 9001812.

U.S. Army Court of Military Review.

27 March 1992.

For Appellant: Captain Kurt J. Mayer, JAGC (argued); Captain Robin N. Swope, JAGC, Captain Michael J. Coughlin, JAGC (on brief).

For Appellee: Captain Jane F. Polcen, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Edith M. Rob, JAGC (on brief).

Before CREAN, WERNER and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant was found guilty, contrary to his pleas, by a general court-martial composed of enlisted members, of rape and false swearing in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (1982) [hereinafter UCMJ]. The appellant was initially sentenced to a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to Private E1.

After the initial trial, the trial defense counsel discovered new information about the victim of the rape, SPC W. The military judge held a post-trial Article 39(a), UCMJ, session to determine whether the new evidence required a new trial. *United States v. Scaff,* 29 M.J. 60 (C.M.A.1989). The military judge determined that the new evidence would not have been admissible

during the findings portion of the trial and would not have affected the findings of guilty. However, he further determined that the new evidence would affect the sentence portion of the trial. The convening authority set aside the initial sentence and ordered a rehearing on sentence only. The appellant was sentenced by a military judge to a bad-conduct discharge, confinement for 54 months, and forfeiture of $500.00 pay per month for 54 months. The convening authority approved the sentence.

The appellant asserts two assignments of error. First, he asserts that the evidence is not legally and factually sufficient for the findings of guilty of rape. Secondly, he asserts that he should have been given a new trial based on the newly discovered evidence.

On 29 March 1990, the appellant and SPC W were on duty as assistant charge of quarters (ACQ) for their headquarters unit.[1] The ACQ duty for the appellant was in one building and SPC W's ACQ duty place was in the next building. As part of his duties, the appellant would go and check on SPC W. About 2400 hours on 20 March 1990, the appellant went to check on the victim, rang the bell, and she let him into the building. Both the appellant and the victim agree that sexual intercourse took place at that time. However, SPC W said that it was without her consent while the appellant claimed the intercourse was consensual.

SPC W testified that after she let the appellant into her duty area, he grabbed her and tried to kiss her. She stated that the appellant pulled her against her will into the hallway, and pushed her against the wall where he began to kiss her and place his tongue in her mouth, while at the same time trying to unbutton her pants. She told the appellant she had to use the latrine and he released her. She entered a bathroom stall and locked the door. She waited a few minutes and then ran out of the latrine, but the appellant was standing by the door so he grabbed her and pulled her into the shower room. Once inside the shower room, the appellant pulled her pants down, got on top of her, and had sexual intercourse with her despite her best efforts to resist him. She testified that she did not scream for help,[2] or try to scare appellant, nor did she bite, kick, or punch him. She did not state what happened thereafter or how they parted company. Additionally, there was no evidence of her battle dress uniform (BDU) being torn or damaged and no evidence of physical injury.

SPC W further testified that the appellant returned again during the night to relieve her so she could get some sleep. The charge of quarters (CQ), Sergeant B, testified that the victim never said anything to him about appellant trying to kiss, assault, or rape her. He testified that she did not appear to be upset, distressed, or depressed. She was allowed to sleep for a few hours and then return to her duty area. The only questions she had of him was to inquire if she could have a television or radio in the CQ area the next time she had duty. SPC W did not report the incident until the next day when she talked to her friend, a female noncommissioned officer. There was evidence that SPC W did not report the rape until she heard the next day that the appellant told members of the unit that "he had taken something" from SPC W that night. The comment of the appellant was understood to mean that he had sexual relations with SPC W.

The appellant testified that after the victim let him into the duty area, she placed her head down on the desk, and he started to massage her shoulders. SPC W told him that the massage felt good and they began to engage in small talk. The appellant stated that SPC W stood up and started to hold the appellant and rub against him. While in the embrace, they began to kiss and walked into the hallway. SPC W said she had to use the latrine and so he

---

1. SPC W is married to another soldier and is not married to the appellant.

2. There were two soldiers on 24-hour duty in the operations section on the floor above where the incident took place. The stairwell doors to the second floor were open.

returned to the CQ area. After SPC W returned from the latrine, they again started hugging and kissing and rubbed against each other. They moved into the shower room where they unbuttoned their pants and pulled them down. Appellant testified that SPC W laid down on the floor and they began having sexual intercourse. SPC W thought she heard someone coming so she asked the appellant to stop. Appellant testified that he stopped, used the latrine, and they both returned to the CQ area. The next time he saw SPC W was approximately 0330 hours when he relieved her so she could get some sleep.

The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is itself convinced of appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ; *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). The test for legal sufficiency is whether, considering the evidence in a light most favorable to the government, the trier of fact could rationally find the existence of every element of the offenses beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Using these standards, we find that the evidence is both factually and legally sufficient to sustain the findings of guilty of rape.

We now turn to the consideration of the newly discovered evidence. The newly discovered evidence concerns SPC M, a soldier with whom the victim, SPC W, was having a sexual relationship.

In the post-trial Article 39(a), UCMJ, session, SPC M testified under a grant of immunity that he and SPC W began a sexual relationship in March 1990 and it continued after the alleged rape by the appellant. He engaged in sexual intercourse with SPC W either the day before or the day after the alleged rape by appellant. SPC M testified that SPC W was "just basically someone to have sex with."

During the first week of May 1990, SPC W attempted suicide by taking an overdose of pills. SPC W testified that her relationship with SPC M had nothing to do with the attempted suicide, even though SPC M had told her three to four days prior to the attempted suicide that they had to limit their relationship. She testified that she also agreed they must limit their relationship. From the discussion of a break-up until the suicide attempt, SPC W and SPC M did not engage in sexual intercourse. However, they did resume sexual activities after the suicide attempt.

The appellant contends that, he should be granted a new trial because the evidence of SPC W's relationship with SPC M would undermine her credibility with respect to whether the sexual intercourse with the appellant was without consent. He contends that her motive to cry rape was to protect her relationship with SPC M. He further alleges that this testimony would have led the trier of fact to a different conclusion. However, the military judge denied the appellant's motion for a new trial, finding that SPC W's attempted suicide was not motivated by any actual or potential end to her relationship with SPC M. He further ruled that evidence of SPC W's sexual conduct prior to the rape was not admissible on the merits, but evidence of her sexual conduct after the alleged rape was relevant and admissible in the sentencing portion of the trial.

At the Article 32, UCMJ, hearing, SPC W testified that early in the evening of the alleged rape, she was talking to SPC M when the appellant came by to check on her. The trial defense counsel questioned SPC W about her relationship with SPC M. She testified that she did not know why SPC M came to see her on CQ duty and that he was just her associate. She further testified that she only talked to him when she saw him.

The first question we must resolve is whether these facts constitute newly discovered evidence. A new trial may be granted only on grounds of newly discovered evidence or fraud on the court-martial. UCMJ art. 73. The appellant must show that: the evidence was discovered after trial; it was not discoverable at the time of trial by the exercise of due diligence; and

the newly discovered evidence, if considered by a court-martial, would probably result in a substantially more favorable result for the appellant. Manual for Courts–Martial, United States, 1984, Rules for Courts–Martial 1210(f)(1); *United States v. Bacon*, 12 M.J. 489, 491 (C.M.A. 1982). This burden is heavier than that borne by an appellant during the normal course of appellate review. *United States v. Walters*, 16 C.M.R. 191, 199 (C.M.A. 1954); *United States v. King*, 27 M.J. 545, 550 (A.C.M.R.1988).

The appellant could have learned of the relationship with SPC M by the exercise of due diligence. The appellant knew that SPC M had visited SPC W at her place of duty the night of the incident. SPC W had been questioned about her relationship with SPC M prior to trial but that line of testimony and evidence was never pursued. Other members of the unit knew of the relationship of SPC W and SPC M. SPC W had attempted suicide and her reasons could have been discovered. The defense learned of the evidence immediately after trial; it was not a fact that was hidden for a long time. We find that the evidence of the sexual relationship between SPC W and SPC M could have been discovered prior to trial by the exercise of due diligence, and the military judge ruled correctly in denying the motion for a new trial. Even though the military judge did not consider whether the evidence was discoverable prior to trial by the exercise of due diligence, the findings of guilty can be affirmed on grounds other than those ruled on by the military judge. *See United States v. Leiffer*, 13 M.J. 337, n. 10 (C.M.A.1982), (citing *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) and *United States v. Allen*, 629 F.2d 51, 57 (D.C.Cir.1980)).

 Even if we were to find that the evidence was not discoverable by the exercise of due diligence, we further find that it would not have resulted in a more favorable result for the appellant. First, even if the evidence was offered at trial, it would not have been admissible. Evidence of a rape victim's past sexual behavior is ex-

cluded unless the evidence is constitutionally required to be admitted. Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 412. The evidence is constitutionally required if the evidence is relevant to prove the existence of a fact asserted by the defense; the evidence is material; the evidence is favorable to the appellant; and the probative value of the evidence outweighs the danger of unfair prejudice which would result from admission of the evidence. *United States v. Dorsey*, 16 M.J. 1 (C.M.A.1983). The fact of a sexual relationship between SPC W and SPC M would have no effect on the appellant's theory of consent. The appellant did not even know of that relationship before the alleged rape; and even if he had, it would not mean that she would have consented to sexual relations with him.

Secondly, if it had been admitted, the evidence would not have resulted in a different finding by the trier of fact. The appellant asserted at trial that SPC W had a motive to lie about consensual sex with the appellant to protect her relationship with her husband. The trier of fact did not agree with this theory. It is highly unlikely that they would have found that SPC W had a motive to lie to protect a relationship with her lover, SPC M. We find that the military judge ruled correctly in determining that the evidence would not have been allowed if offered at trial. Therefore, we conclude this evidence would not have qualified newly discovered evidence and does not require a new trial.

The findings of guilty and the sentence are affirmed.

Judge WERNER and Judge HAGAN concur.