UNITED STATES, Appellee,

v.

Michael A. WILLIAMS, Specialist
U.S. Army, Appellant.

No. 68,019.
CMR No. 9001812.

U.S. Court of Military Appeals.

Argued Feb. 3, 1993.

Decided Aug. 18, 1993.

For Appellant: *Captain Clayton R. Diedrichs* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise, Captain Robin N. Swope, Captain Kurt J. Mayer* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Jane F. Polcen* (argued); *Colonel Dayton M. Cramer and Major Joseph C. Swetnam* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

On June 21, 1990, appellant was tried by a general court-martial composed of officer and enlisted members at Wuerzburg, Federal Republic of Germany. Contrary to his pleas, he was found guilty of rape and false swearing, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to Private E1. After a post-trial hearing, the convening authority on August 28, 1990, approved the findings, but he set aside the sentence and ordered a

rehearing thereon. On August 29, 1990, appellant was sentenced by the military judge to a bad-conduct discharge, as well as confinement and forfeiture of $500.00 pay per month for 54 months. The convening authority approved this sentence. On March 27, 1992, the Court of Military Review affirmed the findings of guilty and the sentence. 34 MJ 919.

On August 26, 1992, this Court granted appellant's petition for grant of review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY NOT GRANTING A DEFENSE MOTION FOR A REHEARING BASED ON THE DISCOVERY OF NEW EVIDENCE WHICH WOULD HAVE PRODUCED A DIFFERENT RESULT AT TRIAL AND IN DEROGATION OF MILITARY RULE OF EVIDENCE 412 AND THE SIXTH AMENDMENT WHICH INFRINGED UPON APPELLANT'S RIGHT TO PRESENT HIS DEFENSE.

We hold that the military judge clearly abused his discretion when he denied the defense motion for a rehearing on findings based on newly discovered evidence which substantially impeached the prosecutrix' testimony on a material matter. *See United States v. Chadd,* 13 USCMA 438, 32 CMR 438 (1963); *cf. United States v. Thomas,* 11 MJ 135 (CMA 1981). *See generally United States v. Scaff,* 29 MJ 60 (CMA 1989). Furthermore, we hold that the military judge likewise legally erred by relying on Mil.R.Evid. 412, Manual for Courts–Martial, United States, 1984, as a basis for denying this motion for a rehearing. *See United States v. Dorsey,* 16 MJ 1 (CMA 1983); *cf. Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988).[1]

The Court of Military Review summarized the facts concerning the granted issue as follows:

After the initial trial, the trial defense counsel discovered new information about the victim of the rape, SPC W. The military judge held a post-trial Article 39(a), UCMJ, session to determine whether the new evidence required a new trial. *United States v. Scaff,* 29 MJ 60 (CMA 1989). The military judge determined that the new evidence would not have been admissible during the findings portion of the trial and would not have affected the findings of guilty. However, he further determined that the new evidence would affect the sentence portion of the trial. The convening authority set aside the initial sentence and ordered a rehearing on sentence only....

\* \* \*

On 29 March 1990, the appellant and SPC W were on duty as assistant charge of quarters (ACQ) for their headquarters unit.[*] The ACQ duty for the appellant was in one building and SPC W's ACQ duty place was in the next building. As part of his duties, the appellant would go and check on SPC W. About 2400 hours on 20 [sic] March 1990, the appellant went to check on the victim, rang the bell, and she let him into the building. Both the appellant and the victim agree that sexual intercourse took place at that time. However, SPC W said that it was without her consent while the appellant claimed the intercourse was consensual.

[*] SPC W is married to another soldier and is not married to the appellant.

34 MJ 919–20.

The Court of Military Review also found: The newly discovered evidence concerns SPC M, a soldier with whom the victim, SPC W, was having a[n extramarital] sexual relationship.

In the post-trial Article 39(a), UCMJ, session, SPC M testified under a grant of immunity that he and SPC W began a sexual relationship in March 1990 and it continued after the alleged rape by the

---

**1.** We generally rely on *United States v. Chadd,* 13 USCMA 438, 32 CMR 438 (1963), for its consideration of the proffered newly discovered evidence in the context of the issues raised in

the original trial. We do not suggest that this decision would today constitute a correct application of Mil.R.Evid. 412, Manual for Courts–Martial, United States, 1984.

appellant. He engaged in sexual intercourse with SPC W either the day before or the day after the alleged rape by appellant. SPC M testified that SPC W was "just basically someone to have sex with."

During the first week of May 1990, SPC W attempted suicide by taking an overdose of pills. SPC W testified that her relationship with SPC M had nothing to do with the attempted suicide, even though SPC M had told her three to four days prior to the attempted suicide that they had to limit their relationship. She testified that she also agreed they must limit their relationship. From the discussion of a break-up until the suicide attempt, SPC W and SPC M did not engage in sexual intercourse. However, they did resume sexual activities after the suicide attempt.

\* \* \*

At the [pre-trial] Article 32, UCMJ, hearing, SPC W testified that early in the evening of the alleged rape, she was talking to SPC M when the appellant came by to check on her. The trial defense counsel questioned SPC W about her relationship with SPC M. She testified that she did not know why SPC M came to see her on CQ duty and that he was just her associate. She further testified that she only talked to him when she saw him.

34 MJ at 921.·

During the post-trial session under Article 39(a), UCMJ, 10 USC § 839(a), appellant requested a rehearing based on his assertion that newly discovered evidence "would produce a different trial result." The newly discovered evidence was testimony from SPC W and SPC M that they were engaging in an extramarital relationship before the offense and after it; that SPC M terminated this relationship after the alleged rape; and that both persons affirmatively

concealed these facts from the earlier court-martial and other parties. Appellant asserted that this evidence would provide a motive for SPC W to fabricate charges against him, i.e., to protect her extramarital relationship with SPC M. Appellant also contended that SPC W was seeking revenge against him because he was informing others of their sexual intercourse. Finally, he argued that evidence of the extramarital relationship between SPC W and SPC M would produce a different result at trial on sentencing.

However, the military judge denied appellant's motion for a rehearing, finding that evidence of SPC W's extramarital relationship with SPC M prior to the rape would not, if considered by a court-martial with the other evidence adduced at trial, produce a substantially more favorable result for appellant. Furthermore, the military judge concluded that admissibility of the evidence of the pre-offense sexual behavior was neither "mandated [n]or otherwise required under either the Fifth or Sixth Amendments to the ... Constitution." Regarding SPC W's extramarital relationship with SPC M after the alleged rape, the military judge made similar findings and conclusions, except that the military judge ruled that such evidence was admissible as proper rebuttal to the Government's aggravation evidence on sentencing (i.e., the trauma of the alleged rape interfered with her marital sex life).

---

Appellant challenges the post-trial decision of the military judge denying his request for a rehearing based on newly discovered evidence. Art. 39(a) and RCM 1102(b)(2), Manual for Courts–Martial, United States, 1984. See United States v. Scaff, 29 MJ 60 (CMA 1989).[2] Such a request should be decided by a military judge in light of the criteria delineated in Article

2. In accordance with RCM 1102(b)(2), Manual, supra, trial defense counsel requested a session under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), based upon newly discovered evidence. During the Article 39(a) session, trial defense counsel specifically requested a rehearing or reopening of the case. The military judge based his authority to grant relief, if deemed necessary, on United States v. Scaff, 29 MJ 60 (CMA 1989).

73, UCMJ, 10 USC § 873,[3] and RCM 1210(f). *Id.* Legal error (*i.e.*, an abuse of discretion) occurs if the findings of fact upon which he predicates his ruling are not supported by evidence of record; if incorrect legal principles were used by him in deciding this motion; or if his application of the correct legal principles to the facts of a particular case is clearly unreasonable. *United States v. Travers*, 25 MJ 61, 62–63 (CMA 1987); *United States v. Rosser*, 6 MJ 267, 271 (CMA 1979). *See United States v. Thomas*, 3 USCMA 161, 11 CMR 161 (1953).

### I

■ This Court has opined that requests for a new trial, and thus rehearings and reopenings of trial proceedings, are generally disfavored. Relief is granted only if a manifest injustice would result absent a new trial, rehearing, or reopening based on proffered newly discovered evidence. *See United States v. Giambra*, 33 MJ 331, 335 (CMA 1991); *United States v. Bacon*, 12 MJ 489, 491–92 (CMA 1982); *United States v. Chadd*, 13 USCMA at 442, 32 CMR at

3. The legislative history of Article 73, UCMJ, 10 USC § 873, indicates that Congress intended that this codal provision mirror practice in Federal civilian courts. *See United States v. Chadd*, 13 USCMA at 441–42, 32 CMR at 441–42. A leading drafter of the Code commented as follows on its scope:

Mr. LARKIN. I think the newly discovered evidence will be surrounded by the practices and procedures in the Federal court that govern that motion such as—oh, that the newly discovered evidence is not cumulative; that if it had been presented to the jury it at least would have changed its mind; and various other rules that circumscribe the use of that type of motion.

Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 1212 (1949), *reprinted in* Index and Legislative History, Uniform Code of Military Justice (1950).

4. Practice in the Federal courts may vary at least in form with respect to the number of requirements a convicted defendant must meet to secure a new trial on the basis of newly discovered evidence. In substance, however, the showing is the same no matter how delineated. *See* 3 Wright *Federal Practice and Procedure: Criminal 2d* § 557 at 315 (1982).

442; *United States v. Childs*, 5 USCMA 270, 273–74, 17 CMR 270, 273–74 (1954).

■ There are at least three specific showings[4] that appellant must make in order to be granted a new trial based on newly discovered evidence: First, "[t]hat the evidence [was] ... discovered since the trial." Second, "[t]hat the evidence is not such that it would have been discovered by the [appellant] at the time of trial in the exercise of due diligence." And third, "[t]hat the newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for" appellant. Para. 109*d*, Manual for Courts–Martial, United States, 1969 (Revised edition), which preceded RCM 1210(f)(2), *adopted in United States v. Bacon, supra* at 491. Application of this three-prong test to post-trial motions for a rehearing or reopening of the trial pursuant to RCM 1102 and Article 39(a) is not inappropriate. *See United States v. Scaff, supra* at 65–66.

The Manual for Courts–Martial now delineates three requirements for granting a new trial under Article 73, UCMJ, 10 USC § 873. RCM 1210(f)(2), Manual, *supra*. This Court has delineated four requirements for granting a new trial under Article 73, relying on a prior Manual provision. Para. 109d, Manual for Courts–Martial, United States, 1951, *cited in United States v. Thomas*, 3 USCMA 161, 165–66, 11 CMR 161, 165–66 (1953). The Federal courts have sometimes delineated five and six requirements for granting new trials. *See* n.3, *supra*. The "injustice" requirement has been applied in terms of "the cumulative nature" of the newly discovered evidence, *United States v. Childs*, 5 USCMA 270, 274, 17 CMR 270, 274 (1954), in terms of "the quality and quantity" of other evidence in the case, *United States v. Chadd*, 13 USCMA 438, 442–43, 32 CMR 438, 442–43 (1963), and in terms of the accused's responsibility for the alleged error, *United States v. Thomas*, 3 USCMA 161, 167, 11 CMR 161, 167 (1953). *See also United States v. Bacon*, 12 MJ 489, 491 (CMA 1982) (permitting denial of new trial by Court of Military Review based on a credibility determination). Today, we hold that concerns expressed by this requirement can be adequately addressed in the other three requirements of RCM 1210(f)(2). *Cf.* Drafters Analysis, Manual, *supra* at A21–79.

■ Turning to the case *sub judice,* the military judge made the following findings of fact regarding the first two required showings:

That counsel for the accused exercised due diligence in attempting to ferret out this evidence prior to trial and was unable to raise the quality of this evidence above the level of mere rumor among friends of the accused without any basis in fact. Specifically, the 3–5 persons who had knowledge of the existence of this information, for whatever reason, refused to disclose its existence to the defense prior to the above named accused's trial.

That only after the conclusion of the above named accused's trial was counsel for the accused successful in turning what once were mere rumors into testimonial evidence in the form of the testimony of both Specialist [M] and Specialist [W]. The court is not persuaded by the statements by Specialist [W] that, had anyone asked her before trial as to whether she and Specialist [M] were having an extramarital affair and an ongoing sexual relationship, that she would have willing [sic] volunteered such information to the questioner.

(Emphasis added.)

The Court of Military Review reached a contrary conclusion on the due-diligence question. It asserted that "the military judge did not consider whether the evidence was discoverable prior to trial by the exercise of due diligence." 34 MJ at 922. However, this was an obvious misreading of the record of trial [5] which seriously undermined that court's holding reversing the military judge.

Moreover, the military judge's holding itself was clearly supported by the record. Specifically, SPC M testified that he lied to defense counsel when asked whether he and SPC W had a sexual relationship, and SPC W testified that she did not inform defense counsel of an extramarital relationship with SPC M only because she was never specifically asked about one. The military judge was neither required nor did he attach any credibility to SPC W's additional response that had she been asked about a sexual relationship with SPC M she would have acknowledged it. *See United States v. Williams,* 21 MJ 360, 362 (CMA 1986). Accordingly, we conclude that the military judge properly found that the first two prongs of the newly-discovered-evidence test were met.

■ We must now turn to the third requirement for granting a rehearing based on newly discovered evidence. The military judge summarily found that evidence of the victim's extramarital relationship would probably not produce a substantially more favorable result on findings for appellant. The record before us, however, unquestionably establishes the contrary. It discloses noncumulative, uncontradicted impeachment evidence which was relevant not only to a material issue in this case but the dispositive issue in this case—the victim's credibility. *See United States v. Davis,* 960 F.2d 820, 825 (9th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992); *United States v. Taglia,* 922 F.2d 413, 415 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). *See generally United States v. Thomas,* 11 MJ at 139 n.1 (Everett, C.J., concurring in part and dissenting in part) (citing earlier Federal cases). Accordingly, we conclude that the military judge clearly abused his discretion in resolving this prong of the newly-discovered-evidence test against appellant. *See generally United States v. Travers,* 25 MJ at 62–63.

During the Government's presentation of evidence on findings at the original trial, testimony was offered by Dr. Bachmeister, a psychiatrist. Dr. Bachmeister testified, over a hearsay objection by defense coun-

---

5. The military judge specifically found:
   That counsel for the accused exercised due diligence in attempting to ferret out this evidence prior to trial and was unable to raise

the quality of this evidence above the level of mere rumor among friends of the accused without any basis in fact....

sel, to statements made by SPC W regarding the alleged rape. He recounted SPC W's version of the incident, as well as SPC W's explanation for attempting suicide within weeks after the alleged rape. According to Dr. Bachmeister, SPC W told him that she tried to kill herself because her chain of command failed to remove her from her place of duty which happened to be in the vicinity of the accused's place of duty. Dr. Bachmeister then opined that SPC W was suffering from Post Traumatic Stress Disorder which could be caused by a number of events, including rape.

Under cross-examination by defense counsel, Dr. Bachmeister acknowledged that a "wide variety of events" could lead to symptoms of Post Traumatic Stress Disorder. He further testified that his evaluation of SPC W was based, in significant part, on what she told him. However, there is absolutely no indication in the record that SPC W informed Dr. Bachmeister of her extramarital relationship with SPC M and the latter's efforts to discontinue the relationship. On the contrary, during the post-trial Article 39(a) session, SPC W did state that she had in fact withheld from Dr. Bachmeister all information regarding her relationship with SPC M.

As trial counsel stated to the members during his brief argument on findings, "Members of the panel, it all boils down to this, and this alone, as even the defense told you earlier today, either you believe [SPC W] or you don't. If you believe her, convict the accused. If you don't ..., thank you." Thus, in the absence of physical evidence and direct corroboration testimony, factors affecting credibility of the alleged victim were clearly of critical importance. *United States v. Davis* and *United States v. Taglia*, both *supra, see* 37 MJ at 357. Whereas appellant presented two character witnesses on his behalf, the Government supported its case, and indirectly SPC W's credibility, with the expert psychiatric testimony of Dr. Bachmeister. His testimony was based, in part, on deceitful and misleading information provided by SPC W. Accordingly, the military judge's conclusion that the undiscovered extramarital relationship evidence would probably not have produced a substantially more favorable result for appellant is simply unsupported by this record. *See United States v. Chadd, supra; cf. United States v. Thomas,* 11 MJ 135 (CMA 1981).

The Court of Military Review, reaching the same conclusion as the military judge, recognized that the central point of contention between the parties was the issue of consent. SPC W said that sexual intercourse occurred and that it was without her consent. Appellant testified that sexual intercourse occurred but that it was consensual on both their parts. The Court of Military Review then said:

> Secondly, if it had been admitted, the evidence would not have resulted in a different finding by the trier of fact. The appellant asserted at trial that SPC W had a motive to lie about consensual sex with the appellant to protect her relationship with her husband. The trier of fact did not agree with this theory. It is highly unlikely that they would have found that SPC W had a motive to lie to protect a relationship with her lover, SPC M....

34 MJ at 922.

This rationale, while more specific than the military judge's, was also unsupported by the record. First of all, its premise is incorrect. Defense counsel argued at trial that SPC W lied about consent to protect herself from an abusive husband, not to protect their relationship. Accordingly, the analogy suggested by the Court of Military Review does not logically follow. Second, we note that the newly discovered evidence would also show that SPC W not only had this extramarital relationship with SPC M but that she was dishonest with Dr. Bachmeister about it, concealed it from her husband and a court-martial panel, and advised SPC M not to voluntarily disclose it. The Court of Military Review's inexplicable disregard of this devastating evidence concerning SPC W's veracity fatally under-

mines its conclusion that a different verdict would not probably occur.

## II

■ We next address the Government's remaining contention that the newly discovered evidence would be inadmissible under Mil.R.Evid. 412. This evidentiary rule provides, in pertinent part, as follows:

(a) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, reputation or opinion evidence of the past sexual behavior of an alleged victim of such nonconsensual sexual offense is not admissible.

(b) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, *evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—*

(1) *admitted in accordance with [requirements of notice and offer of proof] and is constitutionally required to be admitted;* ...

(Emphasis added.)

Ten years ago this Court set forth the standard for determining whether the evidence of a victim's past sexual behavior "is constitutionally required to be admitted." *United States v. Dorsey, supra; see United States v. Elvine,* 16 MJ 14 (CMA 1983); *United States v. Colon–Angueira,* 16 MJ 20 (CMA 1983). The Court unequivocally adopted the Supreme Court's holding that, where evidence is relevant, material, and favorable to the defense, such evidence "is constitutionally required to be admitted." *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982), *cited in United States v. Dorsey, supra* at 5 *and United States v.*

*Colon–Angueira,* 16 MJ at 26; *see also United States v. Saipaia,* 24 MJ 172, 175 (CMA 1987) ("Primarily, Mil.R.Evid. 412 is a rule of relevance, specifically concerned with the relevance of the victim's sexual past in a trial for a sex offense."), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988). Furthermore, this constitutionally limited evidentiary rule has been applied by this Court with equal force to evidence of post-offense sexual behavior. *See generally United States v. Colon–Angueira, supra.*[6]

In *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513, the Supreme Court addressed a claim that an accused was denied his Sixth Amendment right to question a prosecuting rape victim about her prior sexual behavior. Confronted with factual circumstances similar to those now before us, the Court held that the accused's Sixth Amendment right "to be confronted with the witnesses against him" necessarily implies "the right to conduct reasonable cross-examination." *Id.* at 231, 109 S.Ct. at 482–483 (citing *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974)).

Petitioner Olden raised "a defense of consent" to the charge of rape. According to his testimony, the victim "propositioned" him to have sex, and sometime later that evening the petitioner dropped the victim off at her boyfriend's home. Both the victim and her boyfriend were "married to and living with other people at the time of the incident." 488 U.S. at 229, 109 S.Ct. at 482. Her boyfriend purportedly observed the petitioner drop off the victim at his home after the petitioner and the victim had consensual sexual intercourse. Olden's theory of the case was that the victim fabricated the rape story to protect her extramarital relationship with her boyfriend. Notwithstanding this defense theory, the trial judge granted the prosecutor's motion *in limine* to exclude all evidence of

---

6. The Supreme Court has also recognized application of similar rules of evidence to post-offense sexual behavior. *See generally Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102

L.Ed.2d 513 (1988)(applying the Kentucky rape shield law—Ky.Rev.Stat.Ann. § 510.145 (Michie 1985)—to post-offense extramarital relationship).

the extramarital affair. *Id.* at 229–30, 109 S.Ct. at 481–82.

The Supreme Court in *Olden* reversed the state court of appeal's affirmance of the conviction. It held that denial of "cross-examination designed to show a prototypical form of bias on the part" of a witness violated the Confrontation Clause of the Sixth Amendment. *Id.* at 231, 109 S.Ct. at 482. Applying a harmless error analysis of the record, the Court found prejudice. The analysis was based on several factors:

These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* at 233, 109 S.Ct. at 483 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)). It is our view that the *Olden* and *Van Arsdall* decisions encompass the test for "constitutionally required" evidence used by this Court in *United States v. Dorsey, supra.*

■■■ In the case now before us, we also conclude that the cross-examination of the victim about her extramarital affair would have been relevant, material, and favorable to the defendant.[7] First, as in *Olden* the evidence was relevant in that it would undermine SPC W's credibility by providing a reason for her giving false testimony, *i.e.*, that SPC W fabricated the charge to protect her extramarital relationship with SPC M. *Cf. Olden v. Kentucky*, 488 U.S. at 232, 109 S.Ct. at 483 (witness bias is relevant subject for cross-examination); *United States v. Dorsey, supra* at 6. Second, the evidence is material and would affect the judgment of the trier of facts, *i.e.*, that SPC W was the Government's central, indeed crucial, witness.[8] *Cf. Olden v. Kentucky*, 488 U.S. at 233, 109 S.Ct. at 483; *United States v. Dorsey, supra* at 7; *United States v. Colon–Angueira*, 16 MJ at 26–27. Finally, SPC M's testimony is favorable to the defense, *i.e.*, the Government's evidence was far from overwhelming and such third-party testimony could very well shift the outcome in appellant's favor. *Cf. Olden v. Kentucky*, 488 U.S. at 233, 109 S.Ct. at 483; *United States v. Colon–Angueira*, 16 MJ at 27.

In sum, the record makes clear that this is not a case of far-reaching speculation concerning the probable impact of newly discovered evidence. On the contrary, this case presents a situation in which the sexual-relationship evidence supports direct and reasonable inferences about SPC W's state of mind at the time of her formal complaint against appellant, *i.e.*, a possible bias on her part. Moreover, as noted above, evidence at the post-trial hearing uncovered startling examples of SPC W's lack of veracity with respect to this relationship. A newly convened court-martial might rea-

7. In *United States v. Dorsey*, 16 MJ 1, 8 (CMA 1983), this Court did not consider itself bound to apply the balancing test required under Mil. R.Evid. 412(c)(3), yet applied the test nonetheless. Once again, under a literal interpretation of Mil.R.Evid. 412(b)(1), this Court is not required to apply a balancing test for undue prejudice independent of any requirements under Mil.R.Evid. 403. Nonetheless, in applying the balancing test to the case *sub judice*, we "must note that appellant demonstrated that the excluded evidence was relevant, material, and vital to his defense" and therefore satisfied the test for undue prejudice. *United States v. Dorsey, supra* at 8. Furthermore, appellant's constitutional right to present such evidence is para-

mount to any general concern with sheltering alleged rape victims. *Cf. Olden v. Kentucky*, 488 U.S. at 232, 109 S.Ct. at 483.

8. The Government also called Dr. Bachmeister to testify. *See* Part I, *supra*. Additionally, Special Agent Tyrone Robinson testified on behalf of the Government. SA Robinson's testimony addressed the inconsistencies in appellant's two pretrial sworn statements to military law enforcement authorities. Initially, appellant denied having sexual intercourse with SPC W and later admitted to having consensual sexual intercourse. At trial, appellant testified that the reason for lying in the first statement was because he was scared.

sonably find or infer that SPC W was so concerned about preserving her extramarital relationship with SPC M that she would fabricate a rape charge in response to appellant's spreading the word of his having had sexual intercourse with her. To the extent that the military judge and the Court of Military Review ignored the possible repercussions of this devastating evidence, we conclude that they clearly abused their discretion. *See United States v. Chadd, supra; see also Geders v. United States,* 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976) (trial judge's limitations on cross-examination reviewed for abuse of discretion).

The decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge WISS concurs.

GIERKE, Judge (concurring):

I agree with the rationale and the result in the principal opinion but write separately to state my views about applicability of Mil.R.Evid. 412, Manual for Courts-Martial, United States, 1984. I have two concerns. First, we may be laying traps for unwary judges by using terms like "favorable," "vital," "necessary," "material," and "constitutionally required" as though they were interchangeable. Secondly, we may, either by design or inadvertence, be adopting the "conceivable benefit" rule expressly rejected by the Supreme Court in *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). If we require only a showing that a witness could provide some "conceivable benefit" to the defense, then "the number of situations which will satisfy this test is limited only by the imaginations of judges or defense counsel." *Id.* at 866–67, 102 S.Ct. at 3446.

The principal opinion uses the phrase "relevant, material, and favorable to the defense" in the sense that evidence is "necessary"—37 MJ at 359; accordingly, I concur. Any lower standard of admissibility is

not constitutionally mandated, goes beyond *Valenzuela–Bernal,* and approaches the "conceivable benefit" test rejected in *Valenzuela–Bernal.*

I agree with *United States v. Colon–Angueira,* 16 MJ 20 (CMA 1983), for the proposition that post-incident sexual conduct may be relevant to show a motive to lie, but in my view *Colon–Angueira* comes dangerously close to endorsing the rejected "conceivable benefit" test by mandating admission of the victim's sexual conduct 4 months after the alleged rape on the tenuous theory that it shows motive to fabricate. I share Judge Cook's concern, expressed in his dissent in *Colon–Angueira:* "I consider this utter nonsense, for given sufficient time and imagination, and absent any restrictions on length or probability, I am confident that a sequence of inferences can be fashioned such that virtually any fact, theoretically, could be said to support any other." 16 MJ at 31.

Because the alleged victim's sexual conduct in this case was close in time to the alleged rape, relevant to show a motive to lie, and undermined the government expert's opinion which bolstered her testimony, I am satisfied that the evidence is "constitutionally required" to be admitted. Accordingly, I concur.

CRAWFORD, Judge, joined by COX, Judge (concurring in the result):

The principal opinion holds that there is a violation of appellant's constitutional right of confrontation when the prosecutrix makes an allegation of rape to protect her extramarital affair with M and deliberately conceals that information from the defense. As that opinion recognizes, the victim's past sexual behavior is "constitutionally required [under these facts] to be admitted." It continues as follows:

> The Court unequivocally adopted the Supreme Court's holding that where evidence is relevant, material, and favorable to the defense, such evidence is constitutionally required to be admitted. *See United States v. Valenzuela–Bernal,*

458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed. 2d 1193 (1982), *cited in United States v. Dorsey, supra* at 5 and *United States v. Colon–Angueira, supra,* 16 M.J. at 26; *see also United States v. Saipaia,* 24 MJ 172, 175 (CMA 1987) ("Primarily, Mil.R.Evid. 412 is a rule of relevance, specifically concerned with the relevance of the victim's sexual past in a trial for a sex offense."), *cert. denied,* 484 U.S. 1004 [108 S.Ct. 694, 98 L.Ed.2d 647] (1988). Furthermore, this constitutionally limited evidentiary rule has been applied by this Court with equal force to evidence of post-offense sexual behavior. *See generally United States v. Colon– Angueira, supra.*

37 MJ at 359.

The principal opinion also recognizes the factual similarity between this case and *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). Thus it would appear that the holding of *Olden* is sufficiently dispositive of this case without the necessity of citing the earlier opinions of this Court which have been so severely criticized. As Professors Charles Alan Wright and Kenneth Graham have stated:

It is disheartening to see the seriousness with which some courts have treated these forensic fables.[46.1] For example, in a recent decision in the Court of Military Appeals it was held that the defense had a right to inquire into the sexual conduct of the victim's husband and allegations that she had engaged in sexual intercourse with other men after the rape.[46.2] The court thought that the proffered evidence might support an inference that the victim was passing out her favors to others in retaliation for her husband's supposed cheating on her with another woman. The court does not explain why a woman who wanted to make her spouse a cuckold would accuse her putative lover of rape or why a defendant who thought he was engaging in consensual intercourse found it necessary to use a knife to threaten his partner and cut the microphone off her cab radio or why the two of them would select the backwoods as the place for their tryst. One must suppose that when the defendant drove off in the victim's cab, he could reasonably believe that she was making him a gift of the vehicle in gratitude for his participation in her scheme of revenge on her errant spouse.

---

[46.1] Forensic fables

For another example, *see U.S. v. Dorsey,* C.M.A., 1983, 16 Mil.Jus. 1.

[46.2] After the rape

*U.S. v. Colon–Angueira,* C.M.A., 1983, 16 Mil. Jus. 20 (holding exclusion was harmless error).

23 C. Wright and K. Graham, *Federal Practice and Procedure: Evidence* § 5387 at 583 (Pocket Part 1993).

We would leave the issue of an appropriate balance between the rights of defendants and rape victims which are beyond the facts of this case for another day.