# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**Misc. Dkt. No. 2020-05**

———————————

**Anthony W. HARRIS, Jr.**
Master Sergeant (E-7), U.S. Air Force, *Petitioner*

**v.**

**UNITED STATES**
*Respondent*

———————————

Review of Petition for New Trial Pursuant to Article 73, UCMJ

Decided 4 February 2021

———————————

*Military Judge:* Andrew R. Norton (arraignment); Joseph S. Imburgia.

*Approved sentence:* Dishonorable discharge, confinement for 7 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 19 October 2018 by GCM convened at Osan Air Base, Republic of Korea.

*For Petitioner:* Captain David L. Bosner, USAF.

*For Respondent:* Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge POSCH and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

A general court-martial composed of officer members convicted Petitioner, contrary to his pleas, of one specification of sexual assault by causing bodily

harm and one specification of abusive sexual contact, both in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1,2] The court members sentenced Petitioner to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This court affirmed the findings and sentence on 2 September 2020. *United States v. Harris*, No. ACM 39640, 2020 CCA LEXIS 299, at \*35 (A.F. Ct. Crim. App. 2 Sep. 2020) (unpub. op.). On 1 October 2020, Petitioner timely filed a motion for reconsideration as well as the instant petition for a new trial pursuant to Article 73, UCMJ, 10 U.S.C. § 873.[3] On 2 November 2020, the Government submitted its response to the petition, to which Petitioner replied on 6 November 2020. We find no relief is warranted and we deny the petition.

## I. BACKGROUND

A detailed description of the facts underlying Petitioner's convictions is set forth in this court's prior opinion. *Harris*, unpub. op. at \*3–16. For purposes of the petition under review, a more abbreviated summary focused on Petitioner's conviction for sexual assault will suffice.

### A. Petitioner's Trial

Petitioner's convictions arise from two incidents that occurred in Petitioner's dormitory on Osan Air Base (AB), Republic of Korea, in the summer of 2017. In one incident, Petitioner committed abusive sexual contact on a junior Airman, DG. In a separate incident, Petitioner committed sexual assault by bodily harm against another Airman, LS, in Petitioner's bedroom while two other Air Force members, Technical Sergeant (TSgt) DM and Airman First Class (A1C) JH, were present in his quarters. It is this incident involving LS that is the subject of the instant petition.

One evening in June or July 2017, Petitioner was part of a group of individuals who were drinking alcohol and socializing at the designated smoking

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The court members found Petitioner not guilty of one specification of abusive sexual contact in violation of Article 120, UCMJ.

[3] By submitting a motion for reconsideration, which remains pending, Petitioner has preserved our jurisdiction over the petition for a new trial. *See United States v. Preston*, 77 M.J. 313 (C.A.A.F. 2018).

area ("smoke pit") between several dormitories on Osan AB. There they encountered LS, who had already consumed two shots of tequila and between five and seven shots of whiskey that evening. LS had seen Petitioner at the smoke pit before, but did not know him well. LS joined Petitioner's group and began drinking with them. Approximately 45 minutes after LS joined them, five individuals including Petitioner, LS, TSgt DM, and A1C JH agreed to go to Petitioner's quarters to watch movies and continue drinking alcohol.

In Petitioner's quarters, LS drank whiskey and several glasses of wine. Petitioner sat next to LS, spoke with him, and touched him on the arm. Eventually, Petitioner pulled LS up from his seat and led him into Petitioner's bedroom.[4] At trial, LS testified that at this point he was "intoxicated" and "fairly wobbly." At the time, LS initially believed he was being led back to his own room. LS recalled falling face-down on Petitioner's bed. Petitioner then rolled LS over and removed his clothes. LS testified he "wasn't sure exactly what was happening," and he said "no" to Petitioner in a tone that "wasn't very loud."

LS's next memory was of Petitioner "attempting to perform oral sex" on him, with LS's penis in Petitioner's mouth. LS described his memory as "very blotty, and splotchy, and very hazy" at this point, but testified he did not consent and he did recall saying "no" several times. The final time LS said "no," he spoke "a bit louder and pushed [Petitioner] off." According to LS's testimony, then the bedroom door opened and TSgt DM and A1C JH entered the room. TSgt DM and A1C JH were naked, as were Petitioner and LS at this point. According to LS's testimony, Petitioner made a comment to the effect that LS could not get an erection, at which point all three individuals took turns attempting to perform oral sex on LS. Eventually, TSgt DM "stated that it was not going to happen" and told the others to leave the room, which they did. LS got dressed and departed with TSgt DM, who went with LS to LS's dormitory room. According to LS, he said that TSgt DM could sleep on the floor; however, when LS awoke in the morning TSgt DM was sleeping in LS's bed, so LS told TSgt DM to leave.

TSgt DM and A1C JH also testified at Petitioner's trial regarding this incident under grants of testimonial immunity. Both agreed with LS that Petitioner, LS, TSgt DM, and A1C JH were the four individuals in Petitioner's quarters when the charged sexual assault occurred. However, both TSgt DM and A1C JH professed to have no memory of significant portions of the night, and each provided a significantly different account of events.

---

[4] The fifth individual who initially went to Petitioner's quarters, A1C MG, had left the group prior to this point.

TSgt DM testified his memory of events in Petitioner's room was generally poor, apart from certain details, until a point when he recalled waking up and feeling the need to vomit. He testified he ran into Petitioner's bathroom, where he vomited and then showered. According to TSgt DM, A1C JH then came into the bathroom naked and told him to come into Petitioner's bedroom. TSgt DM went to the bedroom wearing only a towel. There he saw LS lying face-down on the bed with Petitioner lying on top of him, and A1C JH sitting nearby on the bed; all three were naked. Petitioner was whispering in LS's ear and "kissing his neck . . . kind of kissing on his body and rubbing his body;" LS was awake but "wasn't reciprocating." TSgt DM felt uncomfortable with this situation and asked Petitioner and A1C JH to leave the room, which they did. When TSgt DM asked LS if he was "okay," LS responded that he was not "comfortable," but if he could go to sleep and "nobody touche[d] [him]," he would be "okay." However, Petitioner returned to the room and lay down on top of LS again in the same position. At that point TSgt DM left the room, got dressed, returned to the bedroom and "yelled" to LS that if he was uncomfortable and needed to go home, TSgt DM would take him home. According to TSgt DM, at that point everyone got dressed and returned to the smoke pit. Petitioner expressed to TSgt DM that he was "upset" that TSgt DM had "stopped it." From the smoke pit, TSgt DM walked with LS back to LS's room.

A1C JH testified that once the group arrived at Petitioner's quarters, they drank and talked for a while. A1C JH began "making out" with TSgt DM while Petitioner and LS went into Petitioner's bedroom with the door closed. A1C JH and TSgt DM then "had sex" on the couch for "[a]bout 45 minutes." At one point Petitioner came out of the bedroom, watched A1C JH and TSgt DM for some period of time, and then slapped A1C JH on the buttocks. At that point A1C JH could see LS through the bedroom door with no shirt on. Petitioner returned to the bedroom. Eventually A1C JH and TSgt DM stopped having sex and took separate showers. After the showers, A1C JH saw Petitioner exit the bedroom and saw TSgt DM go in. A1C JH did not remember how the night ended or where he slept. He testified he had no memory of being in Petitioner's bedroom or engaging in oral sex with LS.

LS did not initially report this incident, and continued to have some social contact with Petitioner in the following weeks. LS testified he "didn't quite know what to think of the whole situation" and was inclined to "pass it off" as simply "drunk idiots" doing "really dumb stuff." LS testified he was subsequently motivated to "come forward" after the Air Force Office of Special Investigations (AFOSI) interviewed him as a possible witness in relation to Petitioner's reported abusive sexual contact against DG, when LS learned that "it was happening to other people."

In addition to abusive sexual contact against DG, the court-martial convicted Petitioner of abusive sexual contact against DG as well as sexual assault against LS by causing penetration of Petitioner's mouth by LS's penis without LS's consent.[5] At the time of Petitioner's conviction on 19 October 2018, the disposition of LS's allegations of sexual assault by TSgt DM and A1C JH were still pending. The events surrounding the disposition of those allegations are the basis for the instant petition for a new trial.

**B. Events Subsequent to Petitioner's Trial**

On 5 April 2019, LS signed a memorandum for "All Reviewing Authorities" regarding his views on the disposition of the allegations against TSgt DM. The memorandum states, in pertinent part:

> [ ] I can no longer testify with certainty that TSgt [DM] committed the charged acts against me. The alleged incidents happened over two years ago, and my memory of the events was already impacted by alcohol. I remember for certain that all three accused members were in the room when the alleged acts happened. I have also distinct memories of the acts committed by both [Petitioner] and A1C [JH]. However, I do not have any memory of the acts alleged against TSgt [DM]. Further, I cannot explain the difference in my two statements to [AF]OSI regarding the acts alleged against TSgt [DM], except to say that I was very tired during the first interview because it was at a time that I would normally be sleeping. I maintain that the statements provided to [AF]OSI were both truthful and to the best of my ability at the time they were made. I have personally forgiven TSgt [DM] for the events of that night. I also credit him with helping to remove me from the situation before more serious acts could have occurred.
>
> . . . I stand by my testimony at the court-martial of [Petitioner]. I testified truthfully and to the best of my ability. My testimony was based on my existing memory of the night in question and after refreshing my recollection by reviewing my video recorded [AF]OSI interviews.
>
> [ ] My position with regards to disposition of this case have [sic] remained consistent: I feel that I am not equipped to decide the best course of action in this case. . . . I believe that the proper

---

[5] The court members found Petitioner not guilty of one specification of committing abusive sexual contact against LS by touching LS's buttocks with Petitioner's penis without consent.

> action to be taken in this case, if any, should be determined by the prosecution and command. I remain willing to participate in any manner that the prosecution and command deem appropriate to fairly administer this case, including testifying at court-martial. . . . That being said, I have no objection to a decision by the Government not to prosecute the case against TSgt [DM], and I am comfortable with a disposition that includes no action at all, administrative or otherwise, against TSgt [DM].

In a memorandum dated 19 April 2019, the convening authority dismissed the pending charge and specification alleging TSgt DM sexually assaulted LS in violation of Article 120, UCMJ. The convening authority cited LS's 5 April 2019 memorandum that LS could no longer testify with certainty regarding the alleged offense by TSgt DM and did not object to a decision not to prosecute as part of the basis for the convening authority's decision.

On 24 July 2019, a general court-martial convened at Royal Air Force Lakenheath, United Kingdom, found A1C JH not guilty of one charge and specification that he committed sexual assault against LS by placing LS's penis in his mouth without consent, in violation of Article 120, UCMJ. LS testified at A1C JH's trial, and Petitioner has supplied an audio recording of that testimony. LS's testimony at A1C JH's trial in July 2019 was consistent in many ways with his testimony at Petitioner's trial in October 2018; however, there were differences. Notably, unlike at Petitioner's trial, but consistent with his 5 April 2019 memorandum, LS testified he did not recall that TSgt DM attempted to perform oral sex on him. In addition, in July 2019 LS testified that when he entered Petitioner's bedroom he fell on his back on Petitioner's bed, whereas in October 2018 he testified he fell face-down. Furthermore, in July 2019 LS testified that he recalled A1C JH entering the bedroom alone, and TSgt DM must have entered at some other time that he did not specifically recall, whereas in October 2018 LS testified the two entered together.

## II. DISCUSSION

### A. Law

A petitioner may petition for a new trial "on the grounds of newly discovered evidence or fraud on the court." Article 73, UCMJ, 10 U.S.C. § 873. A new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that:

> (A) The evidence was discovered after the trial;
>
> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and

> (C) The newly discovered evidence, if considered by a court-mar-
> tial in the light of all other pertinent evidence, would probably
> produce a substantially more favorable result for the accused.

R.C.M. 1210(f)(2); *see United States v. Luke*, 69 M.J. 309, 314 (C.A.A.F. 2011); *United States v. Johnson*, 61 M.J. 195, 198 (C.A.A.F. 2005).

"[R]equests for a new trial . . . are generally disfavored," and are "granted only if a manifest injustice would result absent a new trial . . . based on prof-fered newly discovered evidence." *United States v. Hull*, 70 M.J. 145, 152 (C.A.A.F. 2011) (quoting *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)).

## B. Analysis

The gist of Petitioner's argument is that LS's memorandum regarding the non-prosecution of TSgt DM and A1C JH's court-martial resulting in an ac-quittal—and LS's testimony there—are newly discovered evidence that, if they were available at Petitioner's trial, probably would have produced a substan-tially more favorable result. We are not persuaded by Petitioner's argument.

As an initial matter, we agree that Petitioner has met the first two criteria for a new trial under R.C.M. 1210(f)(2): that the evidence was discovered after trial, and was not discoverable at the time of trial in the exercise of due dili-gence. The evidence upon which the petition is based—LS's 5 April 2019 mem-orandum and A1C JH's July 2019 trial—did not exist at the time of Petitioner's October 2018 court-martial.

However, we do not agree that this new information, either individually or in combination, in the light of all the pertinent evidence, would probably pro-duce a substantially more favorable result for Petitioner. We consider each of the new items of evidence in turn.

### 1. LS's 5 April 2019 Memorandum

LS's memorandum made two significant points with respect to the non-prosecution of TSgt DM: that as of 5 April 2019, LS could not remember the sexual assault he had previously alleged against TSgt DM, and that he did not object to a decision not to prosecute TSgt DM for the previously alleged offense. Significantly, LS did not disavow his prior testimony at Petitioner's trial, in-cluding his testimony regarding TSgt DM. He did not assert that TSgt DM did not commit the alleged offense; he merely indicated that he could no longer remember or reliably testify that TSgt DM committed it, even having reviewed his prior AFOSI interviews. Additionally, LS asserted he retained "distinct memories" of Petitioner's offense as well as the alleged offense by A1C JH. Un-der the circumstances of this case, we are not persuaded that the degradation of the victim's memory over time, with respect not to Petitioner or his offense

but to a different individual and a separate offense, is newly discovered evidence that demonstrates Petitioner's conviction was a "manifest injustice."

We are also unconvinced by Petitioner's suggestion that LS may have falsely claimed not to remember the previously alleged offense by TSgt DM in order "to achieve a certain outcome." This unsubstantiated speculation on Petitioner's part is not supported by the record. We do not find it inherently improbable that LS would become less certain over time whether all three of the individuals present committed a sexual act upon him, rather than only two of the three, particularly where LS's memory was already degraded by his heavily intoxicated state. There was ample evidence of LS's memory gaps and intoxication at Petitioner's trial, so the fact that LS had difficulty remembering aspects of the night's events was not new information. LS had previously testified at Petitioner's trial that he had "forgiven" TSgt DM for his role in the incident—despite his testimony that TSgt DM had participated in the sexual assault—so that information in the 5 April 2019 memorandum was also not new. Moreover, the memorandum did not exonerate TSgt DM, and affirmed LS was willing to support any disposition of the matter the convening authority found appropriate, to include testifying at a court-martial. Furthermore, even if it were true that LS in fact did not want TSgt DM to be prosecuted, we find no probability of a more favorable result for Petitioner where LS retained his "distinct memory" of Petitioner's offense.

### 2. Testimony at A1C JH's Court-Martial

Similarly, we are not persuaded that, had LS's testimony at A1C JH's trial been available to the Defense during Petitioner's trial, Petitioner would have obtained a substantially more favorable result. The material aspects of LS's testimony with regard to Petitioner's offense were essentially consistent with his prior testimony. Notably, at both trials LS testified that Petitioner brought him into Petitioner's bedroom and put him on the bed in a highly intoxicated state; Petitioner performed oral sex on him over a period LS estimated to be approximately 30 minutes; LS repeatedly told Petitioner "no" and did not consent; and finally LS told Petitioner "no" in a louder voice and pushed Petitioner off him. LS's testimony was also consistent with his prior testimony in several other ways regarding events before and after the sexual assault.

The differences in LS's testimony that Petitioner highlights would not have materially altered the course of Petitioner's trial. As described above, that LS no longer had a memory of TSgt DM participating in the sexual assault does not tend to exonerate Petitioner. The differences in whether LS initially fell on the bed face-first or on his back and whether A1C JH entered the bedroom alone or with TSgt DM are discrepancies, but such divergent details do little to vitiate the substance of LS's testimony regarding Petitioner's actions. As we

observed in our prior opinion, "LS testified the initial sexual assault by [Petitioner] lasted about 30 minutes; it stands to reason he would be more likely to recall such an extended event as opposed to passing details of the evening." *Harris*, unpub. op. at *18. Moreover, we again note that the testimony of TSgt DM and A1C JH, as fragmented and divergent as it was, significantly corroborated LS's testimony in terms of Petitioner's opportunity and motive to commit the sexual assault for which he was convicted, as well as other material details such as LS's non-reciprocation of Petitioner's sexual advances. *See id.* at *18–19.

### 3. Concluding Points

For the foregoing reasons, we conclude Petitioner has failed to present newly discovered evidence that would have probably resulted in a substantially more favorable outcome. However, two other contentions Petitioner makes warrant brief comment.

First, Petitioner argues he was unfairly disadvantaged by being tried first, such that the additional information relating to the disposition of the allegations against TSgt DM and A1C JH were not available to the Defense at his trial. However, Petitioner cites no authority for the proposition that the Government lacked the discretion to try him first. Moreover, there are evident legitimate reasons why the Government would elect to try Petitioner before TSgt DM or A1C JH. Among other considerations, Petitioner's case was the most serious in that it involved two different victims and three separate specifications of sexual offenses. In addition, it appears from the record that the case against Petitioner was by far the strongest of the three. Furthermore, having been tried first, Petitioner was not entirely without recourse in the event that truly significant evidence came to light after his trial. If the newly discovered evidence met the applicable standard—the probability of a substantially more favorable outcome—Petitioner might be entitled to a new trial. However, the information Petitioner has submitted here simply does not approach that standard.

Second, Petitioner contends that the three disparate outcomes—his conviction, A1C JH's acquittal, and TSgt DM's non-prosecution—"should be a cause for concern for any reviewing authority." However, Petitioner cites no authority that would entitle him to relief based simply on the fact that he was convicted whereas an alleged co-actor was not. As indicated above, the Government's case against Petitioner was evidently much stronger than its case against TSgt DM or A1C JH, and we do not find the outcomes to be, in themselves, disparate or a cause for judicial concern.

### III. CONCLUSION

The Petition for a New Trial is **DENIED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court