# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39115**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Carlos R. CASSANO**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 December 2017

————————————

*Military Judge:* Brendon K. Tukey.

*Approved sentence:* Dishonorable discharge, confinement for 4 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 31 March 2016 by GCM convened at Luke Air Force Base, Arizona.

*For Appellant:* Major Jarett F. Merk, USAF; Lance J. Wood, Esquire.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY, and DENNIS, *Appellate Military Judges.*

Chief Judge DREW delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DREW, Chief Judge:

A military judge siting as a general court martial convicted Appellant, contrary to his pleas, of sexually assaulting Airman First Class (E-3) (A1C) JE, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10

U.S.C. § 920; and of physically assaulting[1] A1C JE by pinning her against a wall and forcibly kissing her, in violation of Article 128, UCMJ, 10 U.S.C. § 928.[2] The military judge sentenced Appellant to a dishonorable discharge, confinement for four years, and reduction to E-1. The convening authority approved the adjudged sentence.

Appellant raises two assignments of error (AOEs): (1) whether the evidence was legally and factually sufficient to prove that Appellant sexually assaulted A1C JE, and (2) whether the military judge and convening authority abused their discretion in denying a Defense request for a post-trial session under Article 39(a), UCMJ, 10 U.S.C. § 839(a). As to AOE 1, Appellant contends that A1C JE either consented to his sexual acts or that he honestly and reasonably believed that she consented. Regarding AOE 2, Appellant sought the post-trial session to introduce testimony about a statement that A1C JE purportedly said nine months before the sexual and physical assault and over two years before the trial. We find that the evidence is both legally and factually sufficient and that neither the military judge nor the convening authority abused his discretion in denying the post-trial session, as the information the Defense sought to introduce after the trial did not qualify as newly discovered evidence. We find no prejudicial error and affirm.

## I. BACKGROUND

The events that gave rise to Appellant's court-martial occurred during a single incident in November of 2014. Up until several months prior to the incident, Appellant and A1C JE had an on–again and off–again dating relationship. The relationship spanned eight months and they broke up several times over its course, though the break-ups typically lasted only a few days before they were back together again. Until the end, each break-up was instigated by Appellant. When the relationship finally terminated, in July or August of 2014, it was A1C JE who ended it.

Appellant had a history of inpatient drug treatment and clinical depression that was apparently brought on by being estranged from his wife and young son. His mixed emotions regarding his strained relationship with his wife and his strong desire to be reunited with his son played a prominent part in his multiple break-ups with A1C JE. Over the course of their relation-

---

[1] Assault consummated by a battery.

[2] The military judge acquitted Appellant of divers wrongful use of cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, and of communicating a threat, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

ship, A1C JE became aware of Appellant's multiple suicidal ideations and one possible attempt. She also knew that two members of his immediate family had attempted suicide in the past.

After Appellant and A1C JE broke up, they avoided each other at work and off duty. However, at a weekend afternoon football game in November 2014, they ran into each other and had a brief conversation, followed by some short text messages. Much later in the day, Appellant texted A1C JE and led her to believe that he was seriously contemplating suicide. One of his texts indicated that he was drinking alcohol with his friends and they were trying to keep him from shooting himself. He said that one of his friends "literally grabbed the gun as I was pulling the trigger." A1C JE knew that Appellant kept personal firearms. While she no longer loved him, she still cared for him as a friend. She texted that he needed to stop drinking and he needed help. He responded that he wanted her to come to his house and sleep next to him. She clarified that he meant just sleep and nothing else. He said yes. He then said that he was on his way to his house but wanted to pick up more alcohol. She said he did not need it. He asked if she was going to come over, and she said not if he kept drinking. He said he would stop if she would come over. She asked what would happen if she came over. He said that he would go to sleep. She asked if that was all and he said yes. He also said he would agree to go to a mental institution. She said she would pack a few things and come over.

A1C JE was terrified that if she did not agree to go to Appellant's house, he would harm himself. Because he had never tried to do anything against her will in the past, she felt she could trust him. She drove herself to his house and brought her uniform for work the next day. When she arrived, Appellant was in his car listening to music. She got into the car and they talked. Appellant confronted her about whether she had had sexual intercourse with a mutual friend of theirs. She eventually admitted that she had and Appellant became very angry, got out of his car, punched a brick wall, kicked over a trash can, and started pacing back and forth, muttering to himself. A1C JE got out of the car to see if he was okay. Appellant said he was going to shoot and kill the mutual friend and it would be A1C JE's fault. Appellant went to his car, opened the trunk, and took out the case for one of his firearms. A1C JE pushed him away from the case and he let it go. He took his cell phone, told her he was going to text the mutual friend, and went inside his house. She followed him because she did not want to leave him while he was angry.

When A1C JE got into the house, Appellant continued to act in an agitated manner, pacing, talking about how he was going to retrieve his gun, insulting her, and telling her how stupid she was and how she had "ruined everything." Appellant pinned A1C JE against a wall and door with his hands

3

and forcibly kissed her without her consent. This action formed the basis for his conviction of assault consummated by a battery.

Appellant stopped forcibly kissing A1C JE, took off his shirt, and said that he was sorry but he had to get out his anger. He also said he forgave her for sleeping with his friend. They sat down on the couch and she tried to calm him down by talking. Appellant continued to try to kiss her but she resisted. He said he wanted to talk with her like they used to, which was while partially unclothed. He tried to take off her clothes. She resisted and said no but eventually took off her shirt. They sat at opposite ends of the couch and talked. A1C JE did not leave Appellant's house because she was still afraid of what he might do to himself if she did. They went upstairs to the master bedroom. She thought if she could get Appellant to sleep, everything would be over.

A1C JE laid down on Appellant's bed, hoping that he would lay down and go to sleep. At first, he did lay down next to her, but then he got on top of her and started kissing her again. He then took off her underwear, forcibly penetrated her vulva and mouth with his penis, and digitally penetrated her anus, all without her consent. Throughout the incident, A1C JE told Appellant "no" and begged him to stop. Every time she would try to fight and push away from him, Appellant would use more force. Towards the end of the assault, Appellant asked her if he could ejaculate inside her. A1C JE said yes because she wanted the assault to end and, based on their past consensual sexual activity, she knew that he would ejaculate faster if he did it inside her.

Appellant told A1C JE to go to the bathroom and clean herself. He watched as she did. Appellant got back into bed and she did too. She was scared and wanted to stay alive. She lay on the bed, not touching Appellant, and waited for him to fall asleep. She laid awake and waited for the alarm clock to go off so she could get up and go to work. In the morning, she took a shower and tried to act like everything was normal because she did not want Appellant to think something bad had happened.

At work, A1C JE texted Appellant, trying to prompt him to respond and explain why he did what he did. Over the course of the next three days, she told coworkers and supervisors what had happened, but one supervisor tried to convince her that she was just regretting having had consensual sex with Appellant. She also talked to her mother and sister about the sexual assault. On the third day after the assault, she spoke with the Sexual Assault Response Coordinator (SARC) and then submitted to a sexual assault forensic examination.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant asserts that A1C JE's actions in voluntarily going to his house, partially disrobing, getting into his bed, and allowing him to ejaculate inside her renders the evidence legally and factually insufficient to prove that he is guilty of sexual assault. In Appellant's view, the Prosecution did not meet its burden of proof to establish that Appellant's sexual acts were without A1C JE's consent. Further, Appellant contends, even if the evidence *was* sufficient to prove A1C JE did *not* consent, it failed to overcome Appellant's honest and reasonable mistake of fact that she *did*. We disagree.

Article 66(c), UCMJ, requires that we conduct a plenary review of the record and affirm only such findings of guilty and the sentence or such part or amount of the sentence as we find are correct in law and fact and determine, on the basis of the entire record, should be approved. *United States v. Swift*, 76 M.J. 210, 216 (C.A.A.F. 2017). "A complete Article 66, UCMJ, review is a 'substantial right' of an accused." *Id.* (quoting *United States v. Jenkins*, 60 M.J. 27, 30 (C.A.A.F. 2004)). We review both legal and factual sufficiency de novo. *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Gutierrez*, 73 M.J. 172, 175 (C.A.A.F. 2014)). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *Id.* (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)).

Our assessment of factual sufficiency is limited to the evidence presented at trial. *Wheeler,* 76 M.J. at 568 (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)). We "cannot find as fact any allegations of which the accused was found not guilty at trial." *Rosario*, 76 M.J. at 117. However, as an accused is "generally acquitted of offenses, not of specific facts" when "the same evidence is offered at trial to support two different offenses, [we are] not necessarily precluded from considering the evidence that was introduced in support of the charge for which the appellant was *acquitted* when conducting [our] legal and factual sufficiency review of the charge for which the appellant was *convicted*." *Id.* (emphasis added).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed

the witnesses, [we are] convinced of appellant's guilt beyond a reasonable doubt." *Rosario*, 76 M.J. at 117 (quoting *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011)). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). As with legal sufficiency, the term "reasonable doubt" "does not mean that the evidence must be free of conflict." *United States v. Galchick*, 52 M.J. 815, 818 (A.F. Ct. Crim. App. 2000).

After taking a fresh, impartial look at the evidence—determining whether the evidence established that A1C JE did not consent to Appellant's sexual acts *and* that Appellant was not honestly and reasonably mistaken, and making allowances for not having personally observed the witnesses—we are convinced of Appellant's guilt beyond a reasonable doubt. In addition, having reviewed the entire record, we are convinced beyond a reasonable doubt of Appellant's guilt of the sexual assault offense.

## B. Newly Discovered Evidence

Approximately a week after the close of Appellant's trial, one of his friends, whom he first met while they were both undergoing inpatient drug treatment, provided the Defense with an affidavit. The affidavit indicated that A1C JE, who was at the time in the midst of her prior dating relationship with Appellant, visited Appellant during his treatment. During one of those visits in January 2014, the friend indicated that A1C JE told him "[i]f [Appellant] ever left me I would ruin his life."

Three weeks after the trial, and before the record of trial had been authenticated, the Defense filed the affidavit with the military judge in a motion for a post-trial hearing to consider whether the military judge should grant a new trial based on newly discovered evidence. The military judge denied the motion, concluding that the contents of the affidavit failed to satisfy the requirements for a new trial and, as such, a post-trial hearing was unnecessary. In his clemency submissions to the convening authority, Appellant, on the same basis he raised with the military judge, requested that the convening authority order a rehearing or, in the alternative, a post-trial hearing. The convening authority declined to do either.

The military judge or the convening authority may direct an Article 39(a) post-trial session. Rule for Courts-Martial (R.C.M.) 1102(a). Upon the motion of either party, or *sua sponte*, the military judge may call a post-trial Article 39(a) session to resolve any matter that arises after trial and that substantially affects the legal sufficiency of any finding of guilty or the sentence. R.C.M. 1102(b)(2).

Whenever the military judge or the convening authority denies a request for a post-trial 39(a) session to inquire into matters that purportedly would give rise to a new trial, we review the denial for an abuse of discretion. *United States v. Meghdadi*, 60 M.J. 438, 441 (C.A.A.F. 2005). In denying a petition for new trial or a request for a post-trial 39(a) session to consider a request for a new trial, a military judge abuses his discretion "if the findings of fact upon which he predicates his ruling are not supported by evidence of record; if incorrect legal principles were used by him in deciding this motion; or if his application of the correct legal principles to the facts of a particular case is clearly unreasonable." *Id.* (quoting *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)).

"[R]equests for a new trial, and thus rehearings and reopenings of trial proceedings, are generally disfavored. Relief is granted only if a manifest injustice would result absent a new trial, rehearing, or reopening based on proffered newly discovered evidence." *Id.* In order for an appellant to be entitled to a post-trial Article 39(a) session to present evidence in support of a request for a new trial based on newly discovered evidence, he must make three specific showings:

> First, that the evidence was discovered since the trial. Second, that the evidence is not such that it would have been discovered by the appellant at the time of trial in the exercise of due diligence. And third, that the newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for appellant.

*Williams*, 37 M.J. at 356 (quotations and citations omitted).

The military judge made written findings of fact and conclusions of law in denying Appellant's request for a post-trial 39(a) session. The military judge assumed for purposes of his ruling that the author of the affidavit, if called to testify in a post-trial session, would testify consistent with the affidavit. The military judge further assumed, for purposes of the motion, that the contents of the affidavit are accurate and truthful. We accept the military judge's assumptions for purposes of our review.

The military judge determined that the evidence was not discovered after the trial and was known by Appellant well before trial. The military judge's conclusion is well supported by the contents of the affidavit and we adopt it as our own. The military judge points out that the fact that Appellant had knowledge of the evidence clearly establishes that it would have been and indeed was discovered by Appellant at the time of the trial, regardless of whether his trial defense counsel were aware of it. We agree. Finally, in his written findings, the military judge—the factfinder in this judge-alone trial—

7

found A1C JE "to be a credible and compelling witness." The military judge concluded that, while the evidence might have been helpful to the Defense in casting A1C JE in a poor light, "it is clear that this evidence, in light of all other pertinent evidence, would not have produced a substantially more favorable result for the accused." It was A1C JE who ended the relationship with Appellant. The judge did not abuse his discretion in concluding that statement she made months before Appellant assaulted her, regarding what she would do if *he* ever left *her*, would not have produced a substantially more favorable result.

Neither the military judge nor the convening authority abused his discretion in denying Appellant a post-trial session to introduce evidence that would not have established a basis for a new trial.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court